[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 24, 2002
THOMAS K. KAHN
CLERK

No. 00-16633

D. C. Docket No. 99-00459 CV-TWT

RICHARD RODGERS MASON, as
sole Surviving Parent and Administrator
of the Estate of Richard Robert Mason, a
Deceased Minor,

                                        Plaintiff-Appellee,

        versus

FORD MOTOR COMPANY, INC.,
a Delaware Corporation,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(September 24, 2002)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and PAUL[*],

---

[*]Honorable Maurice M. Paul, U.S. District Judge for the Northern District of Florida, sitting by designation.

District Judge.

PER CURIAM:

Defendant-Appellant Ford Motor Company ("Ford") appeals a jury verdict awarding $9,003,000 to Plaintiff-Appellee Richard Rodgers Mason, as sole surviving parent and administrator of the estate of his son, Richard Robert Mason ("Dick Bob"), in connection with an automobile crash in which Dick Bob died. Ford contends that (i) the district court erred in denying Ford's motion for a new trial based on inconsistent verdicts; and (ii) the district court abused its discretion in denying Ford's motion for a new trial or remittitur to correct excessive verdict. No reversible error has been shown; we affirm.

BACKGROUND

Dick Bob, Plaintiff's 11-year old son, died after the Ford Explorer in which he was a passenger crashed with another vehicle. Evidence showed that Dick Bob survived the crash but was unable to get out of the vehicle before he was overcome by post-collision fire and heat. Plaintiff sought to hold Ford liable on two theories: (i) Ford's conduct in designing or testing (or both) the fuel tank was negligent; and (ii) the fuel tank was defectively designed such that Ford was strictly liable. The district court instructed the jury on both theories. The verdict form asked two

2

separate questions before addressing damages: whether Ford was liable on Plaintiff's negligence claim and whether Ford was liable on Plaintiff's defective product claim.[1]  The jury found in favor of Ford on the negligence claim and in favor of the Plaintiff on the defective product claim.  Because the jury answered one of the two questions in Plaintiff's favor, it then reached a final question on damages.  The jury awarded $8 million for the full value of Dick Bob's life, $1 million for conscious pain and suffering of Dick Bob, and $3,000 in funeral expenses.

## DISCUSSION

Ford argues that the jury's verdicts of no liability on Plaintiff's negligence

---

[1]On the two causes of action, the verdict form read this way:

1. NEGLIGENCE
_____     We the jury find in favor of the Plaintiff with respect to his negligence claim.
            or

_____     We the jury find in favor of the Defendant with respect to the Plaintiff's negligence claim.

2.  DEFECTIVE PRODUCT
_____     We the jury find in favor of the Plaintiff with respect to his defective product claim.
            or

_____     We the jury find in favor of the Defendant with respect to the Plaintiff's defective product claim.

If you found in favor of the Plaintiff in Question 1 or 2, proceed to Question 3 [DAMAGES].  If you find in favor of the Defendant in Questions 1 and 2, do not answer Question 3.

claim and liability on Plaintiff's strict liability claim are inconsistent and require a new trial. Whether these verdicts are inconsistent under Georgia product's liability law raises an important issue of Georgia law. We, however, do not have to decide this issue unless Ford preserved properly for appellate review the issue of verdict inconsistency.

Ford first voiced its contention that the jury's verdicts were inconsistent in post-trial motions filed after the jury was excused.[2] Because Ford failed to raise this issue earlier, Plaintiff argues that Ford waived this basis for seeking retrial.

The verdict form asked the jury to (i) find in favor of the Plaintiff or Defendant on the negligence claim; (ii) find in favor of the Plaintiff or Defendant on the defective product claim; and (iii) if the jury found in favor of Plaintiff on either of the first two questions, the jury was asked to complete a question on damages. Ford characterizes this verdict form as calling for special verdicts under Fed.R.Civ.P. 49(a).[3] Plaintiff, however, contends that the verdict form called for a

---

[2]Ford had proposed a verdict form that required the jury to answer three questions in the affirmative -- whether the Explorer was defective in its design, whether a defect in design proximately caused injury to (or the death of) Dick Bob, and whether a defect in design caused injury (or death) to Dick Bob over and above that which resulted from the collision -- before the jury could award damages to Mason. About the form actually used, Ford made no argument that the verdict form could result potentially in inconsistent verdicts. Even after the verdicts were returned, Ford failed to call the court's attention to the claimed inconsistency before the jury was excused.

[3]Fed.R.Civ.P. 49 provides:

(a)    Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the

general verdict on each of the two theories of recovery. The characterization is important: if the jury rendered inconsistent general verdicts, failure to object timely waives that inconsistency as a basis for seeking retrial; inconsistent special verdicts, on the other hand, may support a motion for a new trial even if no objection was made before the jury was discharged.[4]

several special findings which might properly be made under the pleadings and evidence . . . . The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.

(b) General Verdict Accompanied by Answer to Interrogatories. The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict . . . . [T]he court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When the answers are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the court shall return the jury for further consideration of its answers and verdict or shall order a new trial.

[4]Some conflict seems to exist on whether the failure to object to inconsistent special verdicts before the jury is excused constitutes a waiver of the right to seek a new trial by post-conviction motion. Fifth Circuit precedent to which we are bound, see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all former Fifth Circuit decisions rendered before 1 October 1981), concluded that it is error to enter judgment on irreconcilable legally inconsistent answers to special-verdict questions and that even absent a timely motion before the trial court, the appellate court may vacate such a judgment. See Fugitt v. Jones, 549 F.2d 1001 (5th Cir. 1977). Yet, in Golub v. J.W. Gant & Associates, 863 F.2d 1516, 1520 n.4 (11th Cir. 1989), we said that "all challenges to the consistency of special verdicts must be raised before the jury is excused" or the right to challenge the inconsistency on appeal is waived. See also Coralluzzo v. Education Mgmt Corp., 86 F.3d 185 (11th Cir. 1996) (same). Because we conclude that the verdict in this case was

A general verdict is a "verdict by which the jury finds in favor of one party or the other, as opposed to resolving specific fact questions," Black's Law Dictionary 1555 (7th ed. 1999); it is a verdict by which "the jury pronounce[s] generally on all or any of the issues, either in favor of the plaintiff or in favor of the defendant," 89 C.J.S. Trial § 819 (2001).  In contrast, a Rule 49(a) special verdict is a verdict by which "the jury finds the facts particularly, and then submits to the court the questions of law arising on them."  Id. § 820.  With a special verdict, the jury's sole function is to determine the facts; the jury needs no instruction on the law because the court applies the law to the facts as found by the jury.  See Portage II v. Bryant Petroleum Corp., 899 F.2d 1514, 1521 (6th Cir. 1990).  And, the Rule 49(b) verdict providing for a general verdict coupled with answers to written interrogatories, is a hybrid of the general and special verdicts.

Little difference may exist between answers to jury questions posed under Rule 49(a) -- which yields special verdicts to which the court applies the law -- and answers to written interrogatories under Rule 49(b) which are accompanied by forms for a general verdict.  Each procedure focuses the jury on the facts that must be found to resolve the dispute.  When Rule 49(a) is employed, the jury makes specific factual findings; and the judge makes the ultimate legal conclusions based

a general verdict, we can leave to another day the task of untangling these seemingly inconsistent special-verdict precedents.

6

on those facts.  When Rule 49(b) is employed, the jury makes specific factual findings, and the jury itself applies the law to those factual findings to issue a general verdict.  In contrast, when a typical general verdict is employed, the jury is asked to articulate no factual findings other than the ultimate finding of which party wins.[5]

Categorizing a verdict as a general verdict, or as a special verdict under Rule 49(a), or as a general verdict with special interrogatories under Rule 49(b) should be -- but too often seems not -- a simple matter.  See, e.g., Turyna v. Martam Constr. Co., Inc., 83 F.3d 178, 179 (7th Cir. 1996) (verdict rendered not quite a general verdict, but also not special verdicts under Rule 49(a) or a general verdict with interrogatories under Rule 49(b)); Denny v. Ford Motor Co., 42 F.3d 106, 111 (2d Cir. 1994) ("no clear definition in our caselaw of what constitutes a Rule 49(a) verdict and what constitutes a Rule 49(b) verdict"); Loughman v. Consol-Pennsylvania Coal Co., 6 F.3d 88, 104 n.16 (3d Cir. 1993) ("as in many cases, it is not entirely clear whether the verdict is governed by Fed.R.Civ.P. 49(a) or 49(b)").

We believe the verdict form used in this case is best categorized as one that

---

[5]As stated in 6 Am. Jur. Trials §2, p. 1043 (1967):

> "A special verdict may be defined as a determination by the jury, in lieu of a general verdict, of only the facts of a case, referring the decision of the cause on those facts to the court. A special verdict differs from a general verdict in that the jury in rendering a special verdict finds facts without reference to the success of either litigant, while the jury in rendering a general verdict finds directly in general terms for one party or the other."

7

solicited a general verdict on each of two theories of liability.  See Richards v.

Michelin Tire Corp., 21 F.3d 1048, 1055 (11th Cir. 1994) (with respect to each

cause of action -- for negligence and for wantonness -- jury issued general verdict);

Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 54 (2d Cir. 1992) (form asking

jury whether defendant was liable under each of four alternative theories

constituted general verdicts on different legal theories). But see Mercer v. Long

Mfg. N.C., Inc., 665 F.2d 61, 65 (5th Cir. 1982).[6]   In the case before us, the

verdict form has one important indicia of a special verdict: it exposed the basis

upon which the jury awarded damages.  See Stewart & Stevenson Services, Inc. v.

Pickard, 749 F.2d 635, 644 (11th Cir. 1984) ("purpose of a Rule 49(a) special

verdict is to avoid confusion, appellate uncertainty and the need for additional

proceedings by identifying the bases on which the jury rendered its verdict").   But

the court's instructions to the jury on the law to be applied to the jury's factual

findings as well as the requirement that the jury apply the law and render its

---

[6]In Mercer, 665 F.2d at 65, the Fifth Circuit concluded that a verdict form that parallels closely the verdict form used in the present case fell within the ambit of Rule 49(a). On petition for rehearing, the Fifth Circuit concluded that no waiver applied as a consequence of failing to object, before the jury was discharged, to inconsistencies in Rule 49(a) special verdicts.  Mercer v. Long Mfg. N.C., Inc., 671 F.2d 946, 947-48 (5th Cir. 1982).  About the latter point, as earlier discussed, we express no opinion.  About the former point, we disagree; and, because Mercer was decided after  1 October 1981, Mercer is not binding precedent in the Eleventh Circuit.  We do note, however, thatone factor considered important by the Mercer court to its conclusion that Rule 49(a) applied was that the district court could enter judgment only after the district court itself applied a treble damage provision to the damages found by the jury.  Mercer, 665 F.2d at 65.  No similar factor applied to the damage award in the instant case.

verdict, belie characterizing this verdict form as a special verdict.  See Jarvis v.

Ford Motor Co., 283 F.3d 33, 56 (2d Cir. 2002) (Rule 49(a) special verdicts rule

inapplicable when jury required to make determination of ultimate liability as well

as determine facts); Portage, 899 F.2d at 1521 ("If the written questions submitted

to the jury were truly special verdicts, no instruction on the law . . . would have

been given to the jury").  Both the court's instructions and the verdict form

required the jury to perform the most essential  function that marks a general

verdict: to decide which party prevails.

Because we conclude that two general verdicts were rendered by the jury,

Ford's failure  to raise its objection before the jury was discharged[7] waived the

right to contest the verdicts on the basis of alleged inconsistency.[8]

Ford also takes issue with the damages awarded -- $8 million for the "full

---

[7]Ford made no objection focused on inconsistency either when the verdict form was proposed or when the jury returned its verdict.  We need not consider whether objection would have been timely if made before the jury was excused or, whether under Fed.R.Civ.P. 51, objection was required to be made before the jury retired to consider its verdict.  See Jarvis, 283 F.3d at 57 ("Objection to an inconsistency between two general verdicts that is traced to an alleged error in the jury instruction or verdict sheet is properly made under Fed.R.Civ.P. 51.").

[8]We are unpersuaded by Ford's argument that objection would have been futile in the light of the trial court's decision to allow Plaintiff to proceed under both legal theories.  We are cited to no place in the record where Ford alerted the trial court to the potential inconsistency.  Nor are we persuaded that accepting the verdict rendered by the jury implicates the Seventh Amendment.

9

value" of Dick Bob's life,[9] plus $1 million for conscious pain and suffering, plus $3,000 for necessary expenses. By statute, O.C.G.A. § 51-12-12(a), Georgia law provides:

> The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case.

In a diversity action, we look to state law to assess whether the verdict is excessive; but federal law applies to our review of the district court's decision to order a new trial on the issue of excessiveness. See Roboserve, Ltd. v. Tom's Foods, Inc., 940 F.2d 1441, 1446-47 (11th Cir. 1991). We must affirm unless we find an abuse of discretion. Id. at 1447.

The district court determined the damage award to be on the high side of what it considered appropriate, but not so excessive as to be inconsistent with the preponderance of the evidence.[10] Whatever our personal view of the damage award might be, we see no abuse of discretion in the district court's denying Ford's

---

[9]Evidence supported an economic loss of approximately $2 million (discounted present value of Dick Bob's lifetime earnings). The remaining $6 million was for non-economic damages -- lost intangible items whose value cannot be precisely quantified -- and which are allowable under Georgia law in calculating the "full value" of a life. See O.C.G.A. §§ 19-7-1; 51-4-1; 51-4-4; South Fulton Medical Ctr, Inc. v. Poe, 480 S.E.2d 40, 45 (Ga.App. 1996).

[10]By the way, Ford failed to introduce evidence at trial on the damage issue.

10

motion for a new trial or remittitur based on excessiveness of the verdict.[11]

Ford also argues that the district court abused its discretion when it denied Ford's motion for a new trial or remittitur based on passion and prejudice. At the time of trial, Ford was the subject of extraordinary publicity on the failure of Firestone tires on the Ford Explorer. Before trial, the court granted Ford's motion in limine to exclude matters about the tire controversy. Nonetheless, near the end of trial, Ford claimed the publicity had become too adverse to its case and moved for a mistrial.

The district court agreed with Ford that the publicity was pervasive; it questioned individually each juror in open court about whether the publicity would affect his or her deliberations. All jurors indicated awareness of the Ford-Firestone controversy. But the jurors each confirmed an understanding that the Ford-Firestone controversy involved a tire problem unrelated to the gas-tank case being tried before them. Each juror also assured the court that the Ford-Firestone publicity would not influence his or her deliberations.

The district court took reasonable measures to assure that publicity from the Ford-Firestone controversy did not affect the outcome of the case before it. The

---

[11]Ford argues on appeal that the district court erred because a comparative review of damage awards sustained by Georgia appellate courts show this award to be excessive. Without commenting on the propriety of Ford's comparative methodology -- a methodology challenged by Plaintiff -- we note that the Georgia Court of Appeals affirmed a jury damage award exceeding $11,000,000 for the death of a sixteen-year-old girl due to a defective product. See Volkswagen of America, Inc. v. Gentry, 564 S.E.2d 733 (Ga.App. 2002), reconsideration denied (Apr. 12, 2002).

district court found and concluded that the jury recognized that the publicity surrounding tire defects on Ford Explorers had nothing whatever to do with the case being tried. No abuse of discretion has been shown.[12]

AFFIRMED.

---

[12] The cases Ford cites in support of its argument that the district court abused its discretion are criminal cases. Publicity considerations in the criminal context are largely out of place in civil cases. While Ford does make an argument that testimony at Congressional hearings in the Ford-Firestone matter, coupled with pervasive media coverage, "nullified" its defense that it was in compliance with standards issued by the National Highway and Traffic Safety Administration, the district court was in a much better position than we are to assess the impact, if any, of such Congressional hearings on the jury's deliberations. We see no clear error in the district court's findings.