[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12162
_____

D.C. Docket Nos. 1:12-md-02329-WSD,
1:13-cv-00297-WSD

ROBYN CHRISTIANSEN,
GENE CHRISTIANSEN,

                                                        Plaintiffs-Appellees,

versus

WRIGHT MEDICAL TECHNOLOGY, INC.,

                                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 20, 2017)

Before WILSON and JILL PRYOR, Circuit Judges, and BARTLE[*], District Judge.

BARTLE, District Judge:

Defendant Wright Medical Technology, Inc. appeals from the entry against it of a $2,100,000 judgment in this products liability case following a jury verdict in favor of plaintiff Robyn Christiansen[1] and after the district court's denial in part of the defendant's renewed motion for judgment as a matter of law or a new trial.[2]

The trial in this case was the first bellwether trial in a multidistrict litigation involving over 500 cases concerning the Wright Medical Conserve "metal-on-metal" hip replacement device designed and manufactured by the defendant. At trial, Christiansen alleged that Wright Medical was liable for design defect based on strict liability and negligence. She also brought claims of fraudulent misrepresentation, negligent misrepresentation, and fraudulent concealment related to the hip replacement device. She asserted that metal debris from the hip replacement device had caused her physical impairment and severe pain. There was no dispute that Christiansen received the hip replacement device in Utah and that Utah law applied.

---

[*]Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. Before trial, Gene Christiansen abandoned his loss of consortium claim. That claim is not at issue in this appeal.

2. The district court granted in part the motion of Wright Medical to the extent that it sought a reduction in punitive damages from $10,000,000 to $1,100,000. The motion was otherwise denied.

Wright Medical now contends that the district court erred in ordering the jury to continue deliberations after the jury had already begun to deliver its verdict. Wright Medical also argues that the district court erred in its instructions on Utah's products liability law with regard to the unavoidably unsafe product defense in Comment k of Section 402A of the Restatement (Second) of Torts.

## I.

The trial in this matter began on November 9, 2015, and jury deliberations commenced on November 19, 2015. On the second day of deliberations, the jury notified the district court that it had reached a unanimous verdict. The district judge reviewed the verdict sheet in the presence of the jury, and, at his instruction, the deputy clerk then began to read the verdict. The first question, denominated as Question 1A, stated:

> Do you find by a preponderance of the evidence that Wright Medical's hip replacement device was defectively designed?

The jury answered "No." The instruction on the verdict sheet immediately below the jury's answer read:

> **If you answered NO to Question 1A, stop, and sign and date this form. If you answered YES to Question 1A, proceed to Question 1B.**

(Bolded text in original). Even though it had answered "No," the jury did not stop there. It made nine other findings on the verdict sheet, awarded compensatory and

3

punitive damages, and apportioned liability between the parties.[3]  It found that

Wright Medical was liable for negligent misrepresentation and awarded $662,500.

_____

3.  In full, the verdict sheet included the following questions and answers.  Page one read:

> **Design Defect**
>
> 1A.  Do you find by a preponderance of the evidence that Wright Medical's hip replacement device was defectively designed?
>
> [No.]
>
> **If you answered NO to Question 1A, stop, and sign and date this form.  If you answered YES to Question 1A, proceed to Question 1B.**
>
> 1B.  Do you find by a preponderance of the evidence that the hip replacement device was unreasonably dangerous?
>
> [No response indicated.]
>
> **If you answered NO to Question 1B, stop, and sign and date this form.  If you answered YES to Question 1B, proceed to Question 1C.**

Although the questions continued onto the following page, the foreperson signed and dated the bottom of the first page.

Page two of the verdict sheet, contained the following questions and answers:

> 1C.  Do you find by a preponderance of the evidence that when Wright Medical made the hip replacement device, it could not be made safe for its intended use even applying the best available testing and research, and that the benefit of the hip replacement device justified its risk?
>
> [No response indicated.]
>
> **Proceed to Question 1D.**
>
> 1D.  Do you find by a preponderance of the evidence that the design defect was present at the time Wright Medical sold the hip replacement device that was implanted in Plaintiff?
>
> [No.]

**If you answered NO to Question 1D, stop, and sign and date this form.  If you answered YES to Question 1D, proceed to Question 1E.**

1E.  Do you find by a preponderance of the evidence that the design defect was a cause of harm to Plaintiff?

[No response indicated.]

**If you answered NO to Question 1E, stop, and sign and date this form.  If you answered YES to Question 1E, proceed to Question 1F.**

1F.  Do you find by a preponderance of the evidence that Plaintiff is entitled to recover compensatory damages?

[No response indicated.]

If your answer is "Yes," what amount?  [No response indicated.]

**Proceed to Question 2A.**

Again, although the questions continued onto the next page, the foreperson signed and dated the bottom of the second page.

The verdict sheet continued:

**<u>Fraudulent Misrepresentation</u>**

2A.  Do you find by clear and convincing evidence that Wright Medical made fraudulent misrepresentations about the hip replacement device implanted in Plaintiff?

[No.]

**If you answered NO to Question 2A, proceed to Question 3A.  If you answered YES to Question 2A, proceed to Question 2B.**

2B.  Do you find by clear and convincing evidence that Wright Medical's fraudulent misrepresentations about the hip replacement device implanted in Plaintiff was a cause of harm to Plaintiff?

[No response indicated.]

**If you answered NO to Question 2B, proceed to Question 3A.  If you answered YES to Question 2B, proceed to Question 2C.**

5

2C.  Do you award damages in addition to any amount awarded in response to Question 1F?

[No response indicated].

If your answer is "Yes," in what additional amount?  [No response indicated.]

**Proceed to Question 3A.**

**Negligent Misrepresentation**

3A.  Do you find by clear and convincing evidence that Wright Medical made negligent misrepresentations as to the hip replacement device implanted in Plaintiff?

[Yes.]

**If you answered NO to Question 3A, proceed to Question 4A.  If you answered YES to Question 3A, proceed to Question 3B.**

3B.  Do you find by clear and convincing evidence that Wright Medical's negligent misrepresentations as to the hip replacement device implanted in Plaintiff was a cause of harm to Plaintiff?

[Yes.]

**If you answered NO to Question 3B, proceed to Question 4A.  If you answered YES to Question 3B, proceed to Question 3C.**

3C.  Do you award damages in addition to any amount awarded in response to Question 1F, and any additional amount you may have awarded in Question 2C?

[Yes.]

If your answer is "Yes," in what additional amount?  [$662,500]

**Proceed to Question 4A.**

**Fraudulent Concealment**

4A.  Do you find by clear and convincing evidence that Wright Medical fraudulently concealed or failed to disclose an important fact or facts to Plaintiff or Dr. Rasmussen about the hip replacement device implanted in Plaintiff?

6

[No.]

**If you answered NO to Question 4A, proceed to Question 5A.  If you answered YES to Question 4A, proceed to Question 4B.**

4B.  Do you find by clear and convincing evidence that Wright Medical's fraudulent concealment or failure to disclose an important fact or facts to Plaintiff or Dr. Ramsussen [sic] about the hip replacement device implanted in Plaintiff was a cause of harm to Plaintiff?

[No response indicated.]

**If you answered NO to Question 4B, proceed to Question 5A.  If you answered YES to Question 4B, proceed to Question 4C.**

4C.  If your answer is "Yes," do you award damages in addition to any amount awarded in response to Question 1F, and any additional amount you may have awarded in Questions 2C and 3C?

[No response indicated.]

If your answer is "Yes," in what additional amount?  [No response indicated.]

**Proceed to Question 5A.**

**<u>Punitive Damages</u>**

5A.  Do you find by clear and convincing evidence that Wright Medical's conduct:  (i) was willful and malicious; (ii) was intentionally fraudulent; or (iii) manifested a knowing and reckless indifference towards, and a disregard of, the rights of others, including Ms. Christiansen for any of the below conduct?

**[check all that apply]**

In making misrepresentations as to the hip replacement device? [Checked.]

In fraudulently concealing information as to the hip replacement device?  [Not checked.]

If you checked either of the above, what, if any, amount of punitive damages, in addition to any other damages you may have awarded, do you award against Wright Medical?

7

It also found that, in making those misrepresentations, the defendant's conduct was

_____

[$2,500,000]

**Proceed to Question 6A.**

**Comparative Fault**

6A.  Was Plaintiff also at fault in causing Plaintiff's harm?

[Yes.]

**If you answered NO to Question 6A, stop, and sign and date this form.  If you answered YES to Question 6A, please state below what percentage each of the below parties is responsible for Plaintiff's harm.**

Wright Medical:  [78.70%]

Plaintiff:  [21.24%]

Although there was still one page remaining in the verdict sheet, the foreperson signed and dated the bottom of this page.

The final page of the verdict sheet read:

**Special Factual Findings**

The Court requests that you make special factual findings regarding your answer in response to Question 1C.  If you answered "No" to Question 1C, please indicate below which facts Wright Medical failed to prove by a preponderance of the evidence.

**[check all that apply]**

When the hip replacement device was made, it could not be made safe for its intended use even applying the best available testing and research.  [Not checked.]

The benefit of the hip replacement device justified its risk.  [Not checked.]

The hip replacement device, properly manufactured, was accompanied by proper directions and warnings.  [Checked.]

(Bolded text in original).  The bottom of the verdict sheet was signed and dated by the foreperson in the space designated for signature.

8

"willful and malicious," "intentionally fraudulent," or "manifested a knowing and reckless indifference towards, and a disregard of, the rights of others, including Ms. Christiansen." It awarded $2,500,000 in punitive damages. With respect to the question on the verdict sheet about comparative fault, it found Wright Medical 78.7% at fault and Christiansen 21.24% at fault.[4]

Before the deputy clerk could proceed beyond the answer to Question 1A, the district court realized that the jury's responses on the verdict sheet were inconsistent and halted the further reading of the verdict sheet. The court instructed the jury to "take the form back into the jury room, and please carefully read the instructions that are given to you after—beginning on page one and reevaluate whether you have properly filled out the form."

After the jury had returned to the jury room, the court told counsel that the jury's responses had not conformed to the court's instructions:

> We all agreed on the jury form and we all agreed on the instructions and we all agreed at the charge conference that certain findings precluded further findings, and I need to make sure that they understand that. And then I need to make sure that, having understood that, that they complete the form in accordance with the instructions, and I'm going to have them complete the form again. But I think they need that—they need to be told that the instructions which have been agreed upon by counsel for both parties are essential to their findings. So that's what I intend to do.

---

4. The jury's findings with regard to comparative fault do not total 100%.

9

Thereafter, the court had the jury return to the courtroom.  It explained to the jury:

> Ladies and gentlemen, I want to tell you something and then ask you to go back into the jury room and do whatever you think in your considered judgment is necessary for you to reach your verdict, including after what I say, if you think you need to deliberate more, I want you to do that.
>
> But let me explain this jury form.  The jury form was created to walk you through findings that you are required to make and findings that you are not supposed to make if you make certain other findings, and that's why all the instructions are in there.
>
> And so when it says—and you have to follow the instructions specifically because they are an essential part of the verdict form and the way that you are supposed to reach your verdict.  And from what my reading was that you—is that you needed to—I needed to make sure that you went back, and I want you to go back again, and make sure you fully understand the instructions.

The court suggested that the jury reread the verdict sheet out loud to ensure that all members of the jury understood the instructions.  It explained that "what everybody wants here is to make sure that we have given you the proper instructions and tools to reach a verdict, which is what everybody wants."

Wright Medical moved to have the court accept the jury's finding in answer to Question 1A that there was no design defect and enter judgment in its favor and against the plaintiff.  The court denied the motion.  It concluded "that the jury, in my considered legal and practical opinion, they did not understand the instructions in the form."

10

The jury was directed to resume deliberations. Minutes later, it informed the court that it did not understand the verdict sheet and sought further explanation. The court acknowledged that the verdict sheet was not "drafted in a way that, in your first working with it, that you fully understood it." With the consent of counsel, the court revised the verdict sheet instructions to clarify that the jury should not complete the remainder of the sheet if it answered "No" to Question 1A. The instruction now stated:

> **If you answered NO to Question 1A, stop. Do not complete the remainder of the form. The foreperson should sign and date the form and tell the Court Security Officer you have a verdict. If you answered YES to Question 1A, proceed to Question 1B.**

(Bolded text in original).

The following explanatory note was attached to the revised verdict sheet and delivered to the jury:

> Ladies and Gentleman:
>
> In response to your comment that you do not understand the verdict form, I have revised the form by adding clarifying language in certain of the instructions. The instructions where clarifying language was added are identified with an asterisk.
>
> If this language does not answer your questions about how to complete the form, please tell the Court Security Officer so I can respond before you continue your deliberations.
>
> Finally, if in following the instructions you were required to answer Question 1C, please make the Special Factual Findings on page 7. If you ended up not answering Question 1C, do not make the Special Factual Findings on page 7.

11

The court also recharged the jury, which thereafter resumed deliberations.

After approximately one half day of deliberations, the jury informed the court that it was unable to reach a verdict. The court advised it to continue deliberations. The following day, one of the jurors submitted a note to the court in which the juror reported that deliberations were taking an "extensively long time as one of the jurors doesn't look at the evidence through the perspective of the law." A few hours later, the foreperson sent a note which stated: "We are unable to provide a verdict and complete the verdict form. We have one juror that has decided no longer to participate in the jury and the process to reach a unanimous verdict."

In the presence of counsel, the court interviewed the juror who had been accused of refusing to deliberate.[5] After the juror had left the room, counsel and the court discussed his testimony, and the court reviewed the transcript. At the request of counsel, the court asked the juror to return to the room to answer additional clarifying questions:

> THE COURT:  I went back and read the question I asked you, and I didn't do a very good job of that. So I'm going to try again. Let me just be a little bit more careful. Let's go back to the jury form. You obviously read the jury form?
>
> JUROR: Yes, sir.

---

5.  The court also interviewed the foreperson and the juror who had submitted the first note.

THE COURT:  And the jury form basically has some questions, and the jury is supposed to answer yes or no to those questions.  And you have seen those questions that are required to be answered yes or no?

JUROR:  Yes, sir.

THE COURT:  And then after most of the questions, there is an instruction in bold.  You have seen those, haven't you?

JUROR:  Yes, sir.

THE COURT:  And what it does is it looks at the answer to the question right above the instruction, and it will say if you answered yes, then it instructs you to do specific things.  If you answer the question no, it tells you to do something different.

JUROR:  Exactly.

THE COURT:  So I don't want to focus on any specific question, but has there been during your deliberations a question where you have voted with the others on how to answer the question—have there been times when you agreed with the answer to the question?  Has that happened?

JUROR:  Yes, it has.

THE COURT:  And then when you go down and look at the instruction, is the answer to that question an instruction that you disagree with and that you haven't been able to follow?

JUROR:  Haven't been able to follow?  In some instance, yes.

THE COURT:  And is that because you disagree that the instruction would lead to a result that you think should happen?

JUROR:  My answer is different from what some of the others had, yes.

THE COURT:  And when you say your answer—you answered differently, there are others that say here is what the instruction says,

13

this is what we have to do, is it your position is I know that's what the instruction says, but I can't agree with it because I think that would lead to the wrong result?

JUROR:  Yes, sir.

The court determined that the juror was unwilling to follow the instructions on the verdict sheet.  The juror was dismissed without objection from either party.

The seven remaining members of the jury then returned to the jury room.

Thirty minutes later, the jury notified the court that it had reached a verdict.[6]  In

_____

6.  In full, the verdict sheet stated the following:

**Design Defect**

1A.  Do you find by a preponderance of the evidence that Wright Medical's hip replacement device was defectively designed?

[Yes.]

**\*If you answered NO to Question 1A, stop.  Do not complete the remainder of the form.  The foreperson should sign and date the form and tell the Court Security Officer you have a verdict.  If you answered YES to Question 1A, proceed to Question 1B.**

1B.  Do you find by a preponderance of the evidence that the hip replacement device was unreasonably dangerous?

[Yes.]

**\*If you answered NO to Question 1B, stop.  Do not complete the remainder of the form.  The foreperson should sign and date the form and tell the Court Security Officer you have a verdict.  If you answered YES to Question 1B, proceed to Question 1C.**

1C.  Do you find by a preponderance of the evidence that when Wright Medical made the hip replacement device, it could not be made safe for its intended use even applying the best available testing and research, and that the benefit of the hip replacement device justified its risk?

14

[No.]

**Proceed to Question 1D.**

1D.  Do you find by a preponderance of the evidence that the design defect was present at the time Wright Medical sold the hip replacement device that was implanted in Plaintiff?

[Yes.]

**\*If you answered NO to Question 1D, stop.  Do not complete the remainder of the form.  The foreperson should sign and date the form and tell the Court Security Officer you have a verdict.  If you answered YES to Question 1D, proceed to Question 1E.**

1E.  Do you find by a preponderance of the evidence that the design defect was a cause of harm to Plaintiff?

[Yes.]

**\*If you answered NO to Question 1E, stop.  Do not complete the remainder of the form.  The foreperson should sign and date the form and tell the Court Security Officer you have a verdict.  If you answered YES to Question 1E, proceed to Question 1F.**

1F.  Do you find by a preponderance of the evidence that Plaintiff is entitled to recover compensatory damages?

[Yes.]

If your answer is "Yes," what amount? [$550,000]

The foreperson signed her initials next to the damages award.  The verdict sheet continued:

**Proceed to Question 2A.**

**<u>Fraudulent Misrepresentation</u>**

2A.  Do you find by clear and convincing evidence that Wright Medical made fraudulent misrepresentations about the hip replacement device implanted in Plaintiff?

[No.]

15

**If you answered NO to Question 2A, proceed to Question 3A.  If you answered YES to Question 2A, proceed to Question 2B.**

2B.  Do you find by clear and convincing evidence that Wright Medical's fraudulent misrepresentations about the hip replacement device implanted in Plaintiff was a cause of harm to Plaintiff?

[No response indicated.]

**If you answered NO to Question 2B, proceed to Question 3A.  If you answered YES to Question 2B, proceed to Question 2C.**

2C.  Do you award damages in addition to any amount awarded in response to Question 1F?

[No response indicated].

If your answer is "Yes," in what additional amount?  [No response indicated.]

**Proceed to Question 3A.**

**Negligent Misrepresentation**

3A.  Do you find by clear and convincing evidence that Wright Medical made negligent misrepresentations as to the hip replacement device implanted in Plaintiff?

[Yes.]

**If you answered NO to Question 3A, proceed to Question 4A.  If you answered YES to Question 3A, proceed to Question 3B.**

3B.  Do you find by clear and convincing evidence that Wright Medical's negligent misrepresentations as to the hip replacement device implanted in Plaintiff was a cause of harm to Plaintiff?

[Yes.]

**If you answered NO to Question 3B, proceed to Question 4A.  If you answered YES to Question 3B, proceed to Question 3C.**

3C.  Do you award damages in addition to any amount awarded in response to Question 1F, and any additional amount you may have awarded in Question 2C?

16

[Yes.]

If your answer is "Yes," in what additional amount?  [$450,000]

**Proceed to Question 4A.**

**Fraudulent Concealment**

4A.  Do you find by clear and convincing evidence that Wright Medical fraudulently concealed or failed to disclose an important fact or facts to Plaintiff or Dr. Rasmussen about the hip replacement device implanted in Plaintiff?

[No.]

**If you answered NO to Question 4A, proceed to Question 5A.  If you answered YES to Question 4A, proceed to Question 4B.**

4B.  Do you find by clear and convincing evidence that Wright Medical's fraudulent concealment or failure to disclose an important fact or facts to Plaintiff or Dr. Ramsussen [sic] about the hip replacement device implanted in Plaintiff was a cause of harm to Plaintiff?

[No response indicated.]

**If you answered NO to Question 4B, proceed to Question 5A.  If you answered YES to Question 4B, proceed to Question 4C.**

4C.  If your answer is "Yes," do you award damages in addition to any amount awarded in response to Question 1F, and any additional amount you may have awarded in Questions 2C and 3C?

[No response indicated.]

If your answer is "Yes," in what additional amount?  [No response indicated.]

**Proceed to Question 5A.**

**Punitive Damages**

5A.  Do you find by clear and convincing evidence that Wright Medical's conduct:  (i) was willful and malicious; (ii) was intentionally fraudulent; or (iii) manifested a knowing and reckless indifference towards, and a disregard of, the rights of others, including Ms. Christiansen for any of the below conduct?

17

**[check all that apply]**

In making misrepresentations as to the hip replacement device? [Checked.]

In fraudulently concealing information as to the hip replacement device?  [Not checked.]

If you checked either of the above, what, if any, amount of punitive damages, in addition to any other damages you may have awarded, do you award against Wright Medical?

[$10,000,000]

**Proceed to Question 6A.**

<u>**Comparative Fault**</u>

6A.  Was Plaintiff also at fault in causing Plaintiff's harm?

[No.]

**\*If you answered NO to Question 6A, make the Special Factual Findings on Page 7 if required.  After doing so, sign and date this form because your verdict is complete.  If you answered YES to Question 6A, please state below what percentage each of the below parties is responsible for Plaintiff's harm. After doing so, please make the Special Factual Findings on Page 7 if required.**

Wright Medical:  [No response indicated.]

Plaintiff:  [No response indicated.]

<u>**Special Factual Findings**</u>

The Court requests that you make special factual findings regarding your answer in response to Question 1C.  If you answered "No" to Question 1C, please indicate below which facts Wright Medical failed to prove by a preponderance of the evidence.

**[check all that apply]**

When the hip replacement device was made, it could not be made safe for its intended use even applying the best available testing and research.  [Not checked.]

18

contrast to its answer on the first verdict sheet, the jury found in response to Question 1A that the hip replacement device was defectively designed and unreasonably dangerous. It determined that the design defect was present at the time that Wright Medical sold the device to the plaintiff and caused her harm. In this regard, it awarded her $550,000 in damages. The jury also found that Wright Medical had not met its burden to prove that the device could not be made safe for its intended use, even applying the best available testing and research, and that the benefit of the hip replacement device justified the risk. In response to "Special Factual Findings" regarding this conclusion, the jury indicated that Wright Medical had failed to prove that the hip replacement device, properly manufactured, was accompanied by proper directions and warnings.

The jury further determined that Wright Medical had made a negligent misrepresentation about the device and awarded $450,000 in additional damages. It also found that, in making those misrepresentations, the defendant's conduct was "willful and malicious," "intentionally fraudulent," or "manifested a knowing and reckless indifference towards, and a disregard of, the rights of others, including

---

The benefit of the hip replacement device justified its risk. [Not checked.]

The hip replacement device, properly manufactured, was accompanied by proper directions and warnings. [Checked.]

(Bolded text in original). The bottom of the verdict sheet was signed and dated by the foreperson in the space designated for signature.

Ms. Christiansen." It awarded $10,000,000 in punitive damages. It decided that Christiansen was not at fault to any degree.

After the verdict was announced in the courtroom, each member of the jury was polled. The district court accepted the unanimous verdict. Judgment was initially entered in the amount of $1,000,000 in compensatory damages and $10,000,000 in punitive damages. Wright Medical filed a post-trial "renewed motion for judgment as a matter of law, or in the alternative, motion for new trial, and to amend the judgment." In disposing of that motion, the court reduced the award of punitive damages to $1,100,000.

## II.

Wright Medical first argues that the district court erred in failing to grant judgment as a matter of law in its favor based on the jury's finding on the original verdict sheet in its answer to Question 1A that there was no design defect because the jury was instructed to proceed no further in the event of a "no" answer. Wright Medical contends that the district court was required to accept the jury's finding that there was no design defect and deem any further answers by the jury to subsequent questions to be nullities rather than inconsistencies. In the alternative, it asserts that the district court should have ordered a new trial.

We first consider the district court's determination that the answers on the original verdict sheet were inconsistent. Pursuant to Rule 49 of the Federal Rules

20

of Civil Procedure,[7] the district court has authority to identify an inconsistency on

a general verdict sheet containing answers to special interrogatories and either

---

7. In full, Rule 49 provides:

(a) Special Verdict.

(1) In General. The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by:

(A) submitting written questions susceptible of a categorical or other brief answer;

(B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or

(C) using any other method that the court considers appropriate.

(2) Instructions. The court must give the instructions and explanations necessary to enable the jury to make its findings on each submitted issue.

(3) Issues Not Submitted. A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury. If the party does not demand submission, the court may make a finding on the issue. If the court makes no finding, it is considered to have made a finding consistent with its judgment on the special verdict.

(b) General Verdict with Answers to Written Questions.

(1) In General. The court may submit to the jury forms for a general verdict, together with written questions on one or more issues of fact that the jury must decide. The court must give the instructions and explanations necessary to enable the jury to render a general verdict and answer the questions in writing, and must direct the jury to do both.

(2) Verdict and Answers Consistent. When the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers.

(3) Answers Inconsistent with the Verdict. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:

enter judgment, order further deliberations, or order a new trial.[8]  See Fed. R. Civ.

P. 49(b).  "While the district court's application of Rule 49(b) is reviewed only for

abuse of discretion, its threshold determination that the jury returned a general

verdict inconsistent with its answers to special interrogatories is a mixed question

of law and fact . . . subject to plenary review."  Wilbur v. Corr. Servs. Corp.,

393 F.3d 1192, 1199 (11th Cir. 2004) (citations omitted).  This Court recently

summarized the relevant legal principles in Reider v. Phillip Morris USA, Inc.,

> (A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;
>
> (B) direct the jury to further consider its answers and verdict; or
>
> (C) order a new trial.
>
> (4) Answers Inconsistent with Each Other and the Verdict.  When the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to further consider its answers and verdict, or must order a new trial.

Fed. R. Civ. P. 49.

8.  Wright Medical contends that the jury delivered a special verdict, rather than a general verdict with written answers to special interrogatories.  "Categorizing a verdict as a general verdict, or as a special verdict under Rule 49(a), or as a general verdict with special interrogatories under Rule 49(b) should be—but too often seems not—a simple matter."  Mason v. Ford Motor Co., 307 F.3d 1271, 1274–75 (11th Cir. 2002).  "With a special verdict, the jury's sole function is to determine the facts; the jury needs no instruction on the law because the court applies the law to the facts as found by the jury."  Id. at 1274.  In contrast, here, the district court delivered "instructions to the jury on the law to be applied to the jury's factual findings as well as the requirement that the jury apply the law and render its verdict."  See id. at 1275.  Moreover, "[b]oth the court's instructions and the verdict form required the jury to perform the most essential function that marks a general verdict: to decide which party prevails."  See id.  The verdict sheet in this case contained a general verdict with written answers to special interrogatories.

22

793 F.3d 1254 (11th Cir. 2015). There, it explained that "[a] verdict is inconsistent when there is 'no rational, non-speculative way to reconcile . . . two essential jury findings.'" See id. at 1259 (quoting Witt v. Norfe, Inc., 725 F.2d 1277, 1278 (11th Cir. 1984)). "To determine whether a conflict in the verdict can be reconciled, a district court must ask whether the jury's answers could reflect 'a logical and probable decision on the relevant issues . . . submitted.'" Id. (quoting Burger King Corp. v. Mason, 710 F.2d 1480, 1489 (11th Cir. 1983)).

The jury's findings on the original verdict sheet were inconsistent. At the charge conference, the parties and the district court agreed that if the jury were to find that the hip replacement device was not defectively designed, this finding would preclude further findings and require a verdict in favor of Wright Medical. In other words, Christiansen could prevail on her negligent misrepresentation claim only if the jury first found that there was a design defect. Thus, the original verdict sheet instructed the jurors that if they found that there was no design defect, they were to "stop, and sign and date this form." Nevertheless, the jury recorded on the original verdict sheet both that there was no design defect and that Wright Medical had made a negligent misrepresentation. These findings are inherently inconsistent as there is "no rational, non-speculative way to reconcile" these findings. See id. (quoting Witt, 725 F.2d at 1278).

We reject Wright Medical's invitation to ignore this inconsistency on the theory that the jury's response to Question 1A is controlling and any additional responses have no legal effect.[9] It is apparent from these contradictory and irreconcilable responses that the jury did not understand the instructions on the original verdict sheet. If the jury had understood these instructions, it would not have continued to answer additional questions before it. Yet, the jury continued to respond to additional questions thereby rendering its finding in Question 1A irreconcilably inconsistent with its additional answers.

Wright Medical further argues that even if the district court was correct in not entering judgment in its favor, it erred in ordering further deliberations rather than a new trial. In this regard, Wright Medical contends that because the district court stopped publication of the jury verdict immediately after the jury had announced that there was no design defect, the jurors were left with the impression that the district court disapproved of its finding as to no design defect.

Where the jury's responses cannot be reconciled, "the district court has the discretion to direct the jury to further consider its answers and the verdict, or order a new trial." See Reider, 793 F.3d at 1259; Wilbur v. Correctional Servs. Corp., 393 F.3d 1192, 1199 (11th Cir. 2004). "[I]f the jury returns two inconsistent

9. Wright Medical relies on a number of cases concerning inconsistent jury verdicts. See, e.g., Nimnicht v. Dick Evans, Inc., 477 F.2d 133, 135 (5th Cir. 1973); McVey v. Phillips Petroleum Co., 288 F.2d 53, 59 (5th Cir. 1961). To the extent that those cases are not distinguishable from this case, they are inconsistent with the Supreme Court's recent decision in Dietz v. Bouldin, 579 U.S. ___, 136 S. Ct. 1885 (2016).

verdicts, the trial court may resubmit the issue to them for clarification." Univ.

Computing Co. v. Lykes-Youngstown Corp., 504 F.2d 518, 547 (5th Cir. 1974).[10]

"It is often preferable for a district court to direct the jury to reconsider its verdict

in an attempt to eliminate the inconsistency in order to avoid a new trial." Reider,

793 F.3d at 1259.

In Dietz v. Bouldin, 579 U.S. ___, 136 S. Ct. 1885 (2016), the United States

Supreme Court "h[eld] that a federal district court has the inherent power to

rescind a jury discharge order and recall a jury for further deliberations after

identifying an error in the jury's verdict." Id. at 1890. There, the jury had

"returned a legally impermissible verdict" but "[t]he trial judge did not realize the

error until shortly after he excused the jury." Id. By the time that the district court

recognized the error in the verdict, it had already informed the jury that it was

"discharged," the jury had already left the courtroom, and one of the jurors had left

the building to collect a hotel receipt. Id. at 1890–91. None of the jurors had

spoken to anyone about the case. In addition to holding that reassembling the jury

and ordering it to resume deliberations was permissible, the Supreme Court

declared that "[i]n the normal course, when a court recognizes an error in a verdict

---

10. The decisions of the Court of Appeals for the Fifth Circuit as that court existed on September 30, 1981 are binding precedent in the Court of Appeals for the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

before it discharges the jury, it has the express power to give the jury a curative instruction and order them to continue deliberating." Id. at 1892.

Here, upon recognizing the inconsistency in the jury verdict, the district court, consistent with Dietz and Reider, immediately halted publication of the verdict and instructed the jury that an error had been made. At that point, only the finding as to the design defect claim had been announced. Wright Medical argues that this stopping point in the publication of the jury's findings biased further jury deliberations. This contention lacks merit. From a review of the record, the district court acted in a neutral and non-biased manner in acknowledging and addressing the inconsistent verdict. Rather than bias the jury against finding that there had been no design defect, the district court's clarifying instruction emphasized that such a finding was legally permissible. The district court also recharged the jury. Any inconsistencies between the jury's findings on the original verdict sheet and the supplemental verdict sheet can be explained by the jury's failure to understand the verdict sheet instructions. Under these circumstances, it was not an abuse of discretion for the district court to order the jury to continue deliberating.[11]

---

11. Wright Medical also contends that the dismissal of a juror who refused to follow the instructions of the court, taken alongside the resubmission of the case to the jury, biased deliberations. We are not persuaded. Not only did Wright Medical fail to object to the dismissal of this juror, but it has offered no persuasive reason why this dismissal tainted jury deliberations.

26

## III.

We next turn to the challenge of Wright Medical to the charge of the district court concerning the defense against strict liability under Utah law for unavoidably unsafe products set forth in Comment k to Section 402A of the Restatement (Second) of Torts.  Comment k states:

> Unavoidably unsafe products.  There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use.  These are especially common in the field of drugs.  An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected.  Since the disease itself invariably leads to a dreadful death, both the marketing and use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve.  Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous.  The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician.  It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk.  The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402A cmt. k (Am. Law Inst. 1965).

27

The district court delivered the following instruction to the jury concerning the unavoidably unsafe product defense:

> Wright Medical has asserted in this case a defense that the hip replacement device was unavoidably safe and thus was not defective. To prove this defense, Wright Medical must prove by preponderance of the evidence the following elements. First, that when the hip replacement device was made, it could not be made safe for its intended use even applying the best available testing and research. Second, the benefit of the hip replacement device justified its risk. And, third, the product, properly manufactured, was accompanied by proper directions and warnings. If Wright Medical proves these elements by a preponderance of the evidence, the hip replacement device is not defective.

Wright Medical contends that the district court erred in instructing the jury to apply a case-by-case analysis that takes into account whether the specific product at issue was properly manufactured and accompanied by proper directions and warnings. Instead, Wright Medical asserts that the district court should have instructed the jury that the defense is a categorical bar to liability if the jury finds that the device could not be made safe for its intended use and that the benefit justified the risk. The availability of an affirmative defense is a question of law reviewed de novo. See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l, 533 F.3d 1287, 1319–20 n.38 (11th Cir. 2008).

In Grundberg v. Upjohn Co., 813 P.2d 89 (Utah 1991), the Utah Supreme Court rejected the case-by-case approach and adopted Comment k as a categorical bar against strict liability with regard to a particular class of products, namely,

28

pharmaceutical drugs that have been approved by the United States Food and Drug Administration. It "h[eld] that a drug approved by the United States Food and Drug Administration ("FDA"), properly prepared, compounded, packaged, and distributed, cannot as a matter of law be 'defective' in the absence of proof of inaccurate, incomplete, misleading, or fraudulent information furnished by the manufacturer in connection with FDA approval." Id. at 90. In announcing this rule, the Utah Supreme Court "acknowledge[d] that by characterizing all FDA-approved prescription medications as 'unavoidably unsafe,' we are expanding the literal interpretation of comment k." Id. Nonetheless, it extended this defense applicable to FDA-approved prescription drugs because "[i]n its role as 'both a health promoter . . . and . . . a public protector,' the FDA employs a comprehensive scheme of premarket screening and post-market surveillance to ensure the safety and efficacy of all licensed medications." See id. at 96 (quoting New Drug and Antibiotic Regulations, 50 Fed. Reg. 7452 (Feb. 22, 1985)).

Wright Medical asserts that the Utah Supreme Court would extend the categorical bar against strict liability to medical devices, such as its hip replacement device. Because the Utah Supreme Court has not spoken on the issue, we must predict how it would decide this case. See Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011); Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc., 420 F.3d 1317, 1326 (11th Cir. 2005). In

29

Grundberg, the Court adopted the categorical bar against strict liability for

pharmaceutical drugs on the premise that those products have satisfied the

requirements of a comprehensive FDA approval process:

> A drug is designed to be effectively administered to specific
> individuals for one or a number of indications. To determine whether
> a drug's benefit outweighs its risk is inherently complex because of
> the manufacturer's conscious design choices regarding the numerous
> chemical properties of the product and their relationship to the vast
> physiologic idiosyncracies of each consumer for whom the drug is
> designed.  Society has recognized this complexity and in response has
> reposed regulatory authority in the FDA.  Relying on the FDA's
> screening and surveillance standards enables courts to find liability
> under circumstances of inadequate warning, mismanufacture,
> improper marketing, or misinforming the FDA-avenues for which
> courts are better suited.  Although this approach denies plaintiffs one
> potential theory on which to rely in a drug products liability action,
> the benefits to society in promoting the development, availability, and
> reasonable price of drugs justifies this conclusion.
>
> In light of the strong public interest in the availability and
> affordability of prescription medications, the extensive regulatory
> system of the FDA, and the avenues of recovery still available to
> plaintiffs by claiming inadequate warning, mismanufacture, improper
> marketing, or misrepresenting information to the FDA, we conclude
> that a broad grant of immunity from strict liability claims based on
> design defects should be extended to FDA-approved prescription
> drugs in Utah.

Grundberg, 813 P.2d at 98–99.  The Court emphasized that "[n]o other class of

products is subject to such special restrictions or protections in our society."  Id. at

96.

Even if the Utah Supreme Court were to extend the bar against strict liability

to FDA-approved medical devices, we predict that it would not extend it to the hip

30

replacement device at issue here because the record is silent as to whether that device had obtained FDA approval.  At oral argument, Wright Medical conceded that it did not present any evidence at trial as to whether its hip replacement device was approved by the FDA.   Thus, even if Utah law would extend the categorical bar to FDA-approved medical devices, Wright Medical has not met its burden to prove that this affirmative defense applies to its hip replacement device.

On this record, any categorical bar to liability for an unavoidably unsafe product was not available to Wright Medical under Utah law.  Accordingly, the district court did not err in failing to give such an instruction to the jury.  Any error by the district court in instructing the jury on the unavoidably unsafe defense did not affect the result in this case because the jury found that Wright Medical had not proven the defense.  Thus, the district court's error was harmless.[12]

## IV.

We affirm the order of the district court denying the motion of Wright Medical for judgment as a matter of law or for a new trial.  The judgment in favor of plaintiff Robyn Christiansen and against defendant Wright Medical for $2,100,000 stands.

**AFFIRMED.**

---

12.  Because we conclude that the jury's verdict for Christiansen on her strict liability design defect claim suffices to support the verdict, we need not and do not decide whether the jury found that Christiansen proved all the elements of her negligent design defect claim.

31