WOODALL, Justice.
This is an appeal of a decision by the Disciplinary Board (“the Board”) of the Alabama State Bar (“the Bar”) to suspend Tessie P. Clements’s license to practice law in Alabama for five years. We affirm the Board’s decision.

Facts and Procedural History

In June 2010, the Office of General Counsel for the Bar filed formal charges against Clements for allegedly “violating or failing to comply with the Rules of Professional Conduct of the Alabama State *507 Bar.” The charges related to two separate complaints that had been filed against Clements. With regard to the first complaint, the Bar alleged misconduct during Clements’s representation of Gerald and Maxine Ingram in their lawsuit against certain real-estate professionals. The In-grams filed a complaint against Clements with the Bar, alleging that she had failed to inform them of the outcome of their case and that she had forged their signatures on affidavits filed in the Tuscaloosa Circuit Court (“the circuit court”) in response to a motion for a summary judgment filed by the defendants in the real-estate action. The Bar alleged that Clements’s actions violated Rules 1.3, 1.4(a), 3.8(a)(1), 3.3(a)(3), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g), Ala. R. Prof. Cond.
The second complaint against Clements was filed by Jessica Tubbs, who had been appointed to represent Willie Banks in a Rule 32, Ala. R.Crim. P., proceeding in the circuit court. Clements had represented Banks during the trial of his case. With regard to the second complaint, the Bar alleged that “[Clements] fraudulently billed and received funds from the State of Alabama for her purported meetings with [Banks] at the Tuscaloosa County Jail [ (‘the jail’) ].” The Bar alleged that Clements’s actions in this regard violated Rules 3.3(a)(1), 4.1(a), 8.4(a), 8.4(b), 8.4(c), and 8.4(g), Ala. R. Prof. Cond.
On July 12, 2010, Clements filed a response to the Bar’s charges, denying the allegations with regard to both complaints. That same day, Clements moved to have the matter transferred to this Court, arguing that she would not receive a fair hearing before the Board. Clements’s motion was denied. Clements later moved to have a separate hearing with regard to each complaint. That motion was also denied.
At Clements’s request, the Board issued 22 subpoenas for witnesses to appear at the disciplinary hearing. Fourteen of the subpoenaed witnesses filed motions to quash the subpoenas served upon them. The motions to quash were granted by the Board’s hearing officer, Billy Bedsole, without a hearing.
On June 9, 2011, a panel of the Board held a disciplinary hearing on the charges against Clements. Before the hearing began, Bedsole informed the parties that one of the five panel members would not be present for the hearing. He then asked Clements if she was satisfied with the composition of the panel. Clements’s only objection was to Bedsole’s participation because, she argued, he had demonstrated a bias against her. Before the hearing, Clements had filed a motion seeking Bed-sole’s recusal from the panel. Bedsole denied the motion, and the hearing proceeded before a four-member panel without any other objection from Clements as to the composition of the panel.
With regard to the Ingrams’ complaint, Clements conceded at the hearing that she had signed Gerald Ingram’s and Maxine Ingram’s names to the affidavits that had been filed in the circuit court in the real-estate action. However, Clements also testified that she had spoken with Maxine on the day the affidavits were filed and had asked Maxine if she and Gerald could come to the office to sign the affidavits. Clements testified that, when Maxine said that they could not get to Clements’s office before 5:00 p.m., she asked for and received Maxine’s permission to sign the affidavits on the Ingrams’ behalf. Clements signed the Ingrams’ names to the affidavits, and the signatures were notarized by Clements’s secretary.
Clements also testified that “the affidavits prepared on behalf of the Ingrams ... were made not only with the consent of *508 Maxine Ingram, but also using the information that [the Ingrams had] provided to her during the course of her representation.” Clements’s brief, at 16. The affidavits were filed in the circuit court with the Ingrams’ response to the defendants’ summary-judgment motion. Clements did not inform the circuit court or the defendants that she had signed the affidavits on the Ingrams’ behalf.
The Ingrams testified at the disciplinary hearing that they had not authorized Clements to sign their names to the affidavits. Maxine testified that Clements had encouraged them not to attend the summary-judgment hearing in their real-estate action and that Clements had not informed them of the outcome of the case. Clements testified that Maxine was at the Tuscaloosa County courthouse on the day of the summary-judgment hearing and that she had spoken to Maxine in the hallway of the courthouse.
The Ingrams further testified that, some months after the summary-judgment hearing, they went to see another attorney regarding their case. That attorney informed them that the circuit court had entered a summary judgment in favor of the defendants at the summary-judgment hearing. The Ingrams then went to the circuit court clerk’s office to review the court file. While reviewing the file, they discovered the affidavits Clements had signed on their behalf. The Ingrams conceded at the disciplinary hearing that the information in the affidavits was accurate. They insisted, however, that the signatures on the affidavits were forgeries and that they had not authorized Clements to sign the affidavits on their behalf. The In-grams filed a complaint against Clements with the Bar in November 2007.
With regard to the second complaint, Clements testified that she had represented Willie Banks in the circuit court on several charges brought against him, including charges of domestic violence and first-degree rape. Clements testified that she was diligent in her representation of Banks and that she had “got[ten] rid” of the domestic-violence charge. Banks was convicted of first-degree rape.
In 2009, Tubbs was appointed to represent Banks in a Rule 32, Ala. R.Crim. P., postconviction proceeding challenging his first-degree-rape conviction. Clements testified that Tubbs telephoned her to inform her that she would be representing Banks in the Rule 32 proceeding. According to Clements, she told Tubbs: “Jessica, I have somewhere I have to go. I will be back and I will sit down and I will talk to you about the case.” Clements’s brief, at 58. Clements went on to testify that, instead of waiting to meet with Clements, Tubbs went to Clements’s office when she was not there and removed Banks’s file.
Tubbs testified that after informing Clements that she had been appointed to represent Banks in his Rule 32 proceeding, she made arrangements with, and thereby obtained Banks’s case file from, Clements’s secretary. Tubbs also testified that, when she met with Banks at the jail, Banks told her that Clements had visited him in the jail only once while she was representing him. Banks, unable to post bond, had been in the jail throughout the pretrial and trial proceedings.
Tubbs began to investigate Banks’s claim that Clements had made only one visit to the jail, which, Tubbs argued, would have supported an ineffective-assistance-of-counsel claim against Clements. During her investigation, she obtained a copy of the fee declaration Clements had filed in Banks’s case. Clements claimed in the fee declaration that she had visited Banks several times in the jail between August 2006 and July 2007 and that each visit had lasted two to three hours. Tubbs *509 also obtained a copy of the visitor log of the jail, in which were recorded the visits to the jail by non-law-enforcement persons.
Tubbs testified that she could not find Clements’s signature in the visitor log for the dates Clements had shown in her fee declaration that she visited Banks at the jail. Tubbs testified that, to be thorough, she had checked the days immediately surrounding the dates listed in the fee declaration but that she did not find Clements’s name in the visitor log for any of those days.
Clements objected at the hearing to the admission of the visitor log as evidence because, she argued, the chain of custody regarding the log was not proper. Tubbs testified that she had received the copies of the visitor log from the prosecutor during the course of Banks’s Rule 32 proceeding. Clements argued that, because the visitor log had not been subpoenaed directly from the jail, it was outside the chain of custody and was therefore inadmissible. However, Lt. Eric Bailey, chief of jail operations for the Tuscaloosa Sheriffs Office, authenticated the log, testifying that the documents offered were “a true and accurate copy of [the visitor log].”
Lt. Bailey also testified as to the procedure for visitors entering and exiting the jail. He testified that all non-law-enforcement persons, including members of the Bar, had to check in with the guard at the controlled entry to the jail, had to sign the visitor log, and had to obtain a visitor-identification badge. Lt. Bailey testified further that this procedure was in place in 2009, when he became chief of jail operations, and that it had been in place for many years before his appointment. Attorneys who had been subpoenaed by Clements testified that the controlled entry to the jail was often busy and that the procedures for entering and exiting the jail had been more relaxed under the chief of jail operations who had preceded Lt. Bailey. However, the attorneys also testified that they had never entered or exited the jail without signing the visitor log and that they had never witnessed any individual being allowed entry into the jail without first signing the log.
Clements testified that she had visited several clients in the jail, including Banks, and that she had not been required to sign the visitor log every time she entered the jail. She testified that the attendants at the jail would “usually just wave [her] in, say[ing] [‘] Tessie, who you want to see?’] and [she would] go back there.” Clements specifically named James Taggert and Erica Richards as individuals who would allow her into the jail without requiring her to sign in. However, neither Taggert nor Richards testified at the disciplinary hearing.
When asked whether she had any supporting evidence for the entries in the fee declaration, Clements insisted that she could not provide such evidence because Tubbs had stolen her file on Banks’s case and refused to return it. However, Clements did not identify anything allegedly in the file that would corroborate the entries in the fee declaration.
After the hearing, the Board found Clements guilty of the violations of the Alabama Rules of Professional Conduct that had been alleged against her in the Bar’s formal charges. As a result of its findings, the Board suspended Clements’s law license for five years and ordered her to reimburse the State of Alabama $1,080 and to pay the costs of the disciplinary proceedings. Clements has appealed the Board’s decision.

Issues

Clements argues that the Bar “violated [her] due process rights” by “failing] to *510 bifurcate the hearings on her two ... unrelated bar complaints,” by “fail[ing] to provide her with hearings on the Motions to Quash filed by witnesses in her case,” and by “fail[ing] to provide a 5-member panel to adjudicate her cases.” Clements’s brief, at 9. Clements also argues that the Board’s decision was not supported by clear and convincing evidence. Finally, Clements argues that “the ... Bar was prejudicial toward [her] in such a manner that she was denied a fair and impartial hearing and sentencing.” Clements’s brief at 10.

Standard of Review

“This Court applies the ‘clearly erroneous’ standard of review to the findings of fact of a panel of the Disciplinary Board. Tipler v. Alabama State Bar, 866 So.2d 1126 (Ala.2008). ““A finding is “clearly erroneous” when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.’ ” ’ Tipler, 866 So.2d at 1137, quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), quoting in turn United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Questions of law presented by an appeal from a Bar matter are reviewed de novo. Tipler.”
Alabama State Bar Ass’n v. Dudley, 95 So.3d 777, 779-80 (Ala.2012).

Analysis

Clements first argues that “the Alabama State Bar violated her due process rights as a result of the Bar’s failure to bifurcate the [disciplinary hearing on the] two unrelated bar complaints against her.” Clements’s brief at 40. Clements argues that “[t]he issue of a combined hearing involving unrelated bar complaints has not been previously directly addressed by the Alabama Supreme Court. However, the Supreme Court has made a specific guarantee of due process as it relates to State Bar hearings.” Id. She then quotes Ex parte Case, 925 So.2d 956, 960 (Ala.2005), for general principles of law regarding procedural due process, including the right to “ ‘ “an orderly proceeding appropriate to the case or adapted to its nature, just to the parties affected, and adapted to the ends to be attained; one in which a person has an opportunity to be heard, and to defend, enforce, and protect his rights before a competent and impartial tribunal legally constituted to determine the right involved.” ’ ” (Quoting Katz v. Alabama State Bd. of Med. Exam’rs, 351 So.2d 890, 892 (Ala.1977), quoting in turn 2 Am.Jur.2d Administrative Law § 353.)
However, Clements does not provide any particular argument as to how the Board’s failure to conduct separate hearings in this case violated the general principles of due process set forth in Ex parte Case. Instead, she simply argues that “a practicing attorney does not lose his or her right to fundamental due process simply because that attorney is at a disciplinary hearing.” Clements’s brief, at 41. This Court has stated:
“When a brief states general propositions but fails to make specific application of those propositions to the rulings assigned as error, it is waived and will not be considered on appeal.
“... “Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment on those issues, for it is neither the Court’s duty nor its function to perform all the legal research for an appellant.’ ”
Welch v. Hill, 608 So.2d 727, 728 (Ala.1992) (quoting Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala.1990) (citations omitted)).
*511 Clements also cites Rule 42(b), Ala. R. Civ. P., which provides, in pertinent part: “[T]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue. (Emphasis added.)[1] Clements argues that “[a]s [her] bar complaints involved two completely unrelated sets of facts and complainants, [her] request for a separation of her hearings, rather than a combined hearing[,] should have been granted by the hearing officer in her cases.” Clements’s brief, at 42. However, the language of Rule 42 is permissive, not mandatory, and does not require bifurcated proceedings with regard to separate complaints. Clements has not demonstrated by argument or authority that the Board erred in refusing to have separate hearings, that the Board’s hearing violated her due-process rights, or that she was prejudiced in any way by the Board’s failure to conduct two separate hearings on the two complaints against her.
Clements next argues that the Board “violated [her] due process rights when it failed to provide her with a hearing on the Motions to Quash filed by witnesses in her case, in violation of Rule 17(c) of the Alabama Rules of Disciplinary Procedure.” Clements’s brief, at 42. Rule 17(c) provides: “An attack on a subpoena issued pursuant to this rule shall be heard and determined by the Disciplinary Board or by the court in which enforcement of the subpoena is being sought.” We do not read Rule 17(c) as providing a right to a hearing on a motion to quash a subpoena. Instead, we agree with the Bar that the requirement that “[a]n attack on a subpoena ... be heard and determined” simply means that the Board must “consider and rule upon the issues” raised by motions to quash. The Bar’s brief, at 42. Indeed, Clements has cited no authority to the contrary. It is undisputed that the hearing officer, pursuant to the authority granted him by Rule 4.2(b)(5), Ala. R. Disc. P., considered and ruled upon the motions to quash filed in this case.
Moreover, Clements has not argued, either at the hearing or on appeal, that the testimony of the witnesses whose subpoenas were quashed was essential to her defense or that she was prejudiced in any way by the absence of that testimony. Thus, she has not demonstrated by argument or authority that the Board’s decision to quash the subpoenas denied her a meaningful opportunity to be heard or that the Board’s decision violated her rights to due process in this regard. See Hayes v. Alabama State Bar, 719 So.2d 787, 790 (Ala.1998) (“Due Process mandates notice and an opportunity to be heard at a meaningful time and in a meaningful way.”).
Clements next argues that the Bar “violated [her] right to due process by its failure to provide a 5-member panel to adjudicate her disciplinary hearing pursuant to Rules 4(a)(1), 4(a)(2), and 4.1 of the Alabama Rules of Disciplinary Procedure.” Clements’s brief, at 47. Rules 4(a) and 4.1 address the establishment and general organization of the Board. Rule 4(a)(1) provides that “[t]he Board of Commissioners of the Alabama State Bar shall appoint three panels of five members each, each panel to be known as ‘The Disciplinary Board of the Alabama State Bar.’ ” However, as with the previous arguments, Clements has not demonstrated that the *512 hearing before a four-member panel violated her right to due process.
Rule 4(d), Ala. R. Disc. P., provides, in pertinent part, that “[a] panel shall act only with the concurrence of a majority of its five members, notwithstanding that fewer than all members are present to conduct the proceeding.” (Emphasis added.) This rule expressly anticipates a hearing in which fewer than five members of the panel participate. Moreover, Clements raised no objection at her disciplinary hearing to the number of members on the panel. Bedsole asked Clements directly whether she was “satisfied with the composition of the panel that [was] going to review [her] case.” As noted above, Clements objected to Bedsole’s presence on the panel, arguing that he was biased against her and requesting that he recuse himself.[2] After Bedsole denied the motion seeking his recusal, the hearing proceeded without further objection from Clements as to the composition of the panel.
“Appellate courts will not consider an issue that was not properly raised or pleaded in the trial court,” State of Alabama ex rel. State of Ohio v. 718 So.2d 669, 671 (Ala.1998), and “ ‘ “ ‘[a] party cannot assume inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings which was invited by him or was the natural consequence of his own actions.’ ” ’ ” Ex parte Sharp, [Ms. 1080959, December 4, 2009] — So.Bd -, - (Ala.2009) (quoting Clark v. State, 896 So.2d 584, 648 (Ala.Crim.App.2000), quoting in turn other cases). By failing to object at the disciplinary hearing to the number of members on the panel, Clements has waived that argument on appeal.
Clements next argues that the Board’s holding that she had violated the Alabama Rules of Professional Conduct was not “supported by clear and convincing evidence.” Clements’s brief, at 49. Clements’s arguments regarding the sufficiency of the evidence relate almost entirely to the credibility of the witnesses against her. With regard to the first complaint, Clements argues that “[throughout the disciplinary hearing, the Ingrams’ testimony proved to be unreliable and simply in retaliation for Attorney Clements’[s] collection efforts to recover deposition expenses incurred in their case.” Clements’s brief, at 51. She also argues that the Board “disregarded] ... the Ingrams’ inconsistent testimony and their lack of memory regarding significant events surrounding Attorney Clements’[s] representation.” Id. at 56.
With regard to the second complaint, Clements argues that Tubbs’s failure to name Banks in her complaint filed with the Bar, as well as her “continued unauthorized possession” of Clements’s file on Banks,
“demonstrated that [Tubbs] was not a credible witness and had no personal knowledge of matters pertaining to Attorney Clements’[s] representation of Mr. Banks. Moreover, Ms. Tubbs’[s] continued retention of Attorney Clements’[s] office file on Willie Banks demonstrates that she has an [u]lterior motive to damage Attorney Clements’[s] *513 law license in order to make a profit by creating a fraudulent malpractice suit against Attorney Clements.”
Clements’s brief, at 58-59.
This Court has stated: “ ‘ “The weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the [trier of fact].”’” Ex parte McGriff, 908 So.2d 1024, 1048 (Ala.2004) (quoting Ex parte Roberts, 735 So.2d 1270, 1278 (Ala.1999), quoting in turn Smith v. State, 698 So.2d 189, 214 (Ala.Crim.App.1996)). Here, the Board, as the trier of fact, resolved credibility questions and any conflicts in the testimony against Clements.
In its report and order, the Board stated: “We ... find the testimony of the Ingrams to be credible in that they did not authorize Clements to execute the affidavits. We do not find Clements[’s] testimony as to this issue to be credible and thus reach a finding of guilt on the counts enumerated hereinabove.” The Board also stated:
“Clements testified that she frequently failed to sign the visitor registration log [at the jail] and simply was allowed almost unfettered access to the [jail], Clements appeared to assert that Tubbs or some other third party had gained unauthorized access to the original visitor registration log and altered it. She farther claimed that Tubbs had illegally accessed Clements[’s] client file related to her representation of Willie Banks. This Panel finds these assertions to be wholly without merit and finds the testimony of Tubbs and [Lt.] Bailey to be credible.”
After resolving the credibility questions and any conflicts in the testimony against Clements, the Board had clear and convincing evidence to support its determination that Clements had violated the Alabama Rules of Professional Conduct, as alleged by the Bar. It is undisputed that Clements did, in fact, file with the circuit court falsely signed and notarized affidavits. Tubbs testified that Banks told her that Clements had visited him only once while she represented him. Tubbs also testified that the number of visits to Banks at the jail listed in Clements’s fee declaration was not supported by the information in the visitor log for the jail and that she had received Clements’s file concerning Banks from Clements’s secretary. Lt. Bailey testified that the pages from the visitor log offered at the hearing were authentic and that the established procedure at the jail required all visitors to sign in and out for every visit to an inmate.[3] Clements provided no evidence, beyond her own testimony, indicating that she had made the visits to Banks that were listed in her fee declaration.
In light of the foregoing, we cannot conclude that the Board’s findings of fact were clearly erroneous or that its decision was not supported by clear and convincing evidence. Therefore, Clements has not dem *514 onstrated any error in the Board’s decision in this regard as well.
Finally, Clements argues that “the [Bar] was prejudicial toward [her] in such a manner that she was denied a fair and impartial hearing and sentencing.” Clements’s brief, at 63. Clements cites several facts that, she claims, demonstrate that the panel was biased against her, including the “extremely harsh sentence” imposed by the Board, which, she argues, was imposed even though she had no prior record of discipline with the Bar. As with her earlier arguments, however, Clements has not cited any authority in support of her claim that she was denied a fair and impartial hearing or in support of her allegation that the sentence imposed was overly harsh. Thus, she has failed to demonstrate any reversible error in the Board’s decision in this regard as well. See Welch, 608 So.2d at 728 (“ ‘Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment on those issues.... ’ ”).

Conclusion

Clements has not demonstrated by argument or by citation to authority that she was denied procedural due process in her disciplinary proceeding or that the Board’s decision was clearly erroneous. Therefore, we affirm the Board’s decision.
AFFIRMED.
STUART, BOLIN, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.
MALONE, C.J., recuses himself.

. The Alabama Rules of Civil Procedure are generally applicable in Bar disciplinary proceedings. See Rule 3(b), Ala. R. Disc. P.

. Clements argues in her brief that “the pretrial conduct of [Bedsole] indicated that he was so clearly biased and intentionally prevented Attorney Clements’[s] due process right to a just hearing in front of an impartial tribunal as guaranteed under the 14th amendment of the U.S. Constitution.” Clements’s brief, at 46. However, as with earlier arguments, Clements does not argue with particularity or cite any authority indicating how Bedsole's alleged bias denied her a meaningful opportunity to be heard. Further, she has not appealed Bedsole's decision to deny her motion seeking his recusal from the panel.

. Clements argues that the visitor log was “tainted,” Clements’s brief, at 60, and that it "should not have been admitted into evidence." Id. at 61. Specifically, she argues that the prosecutor from whom Tubbs received the visitor log "broke the chain of custody for obtaining the jail log[] and obtained documents from the jail without Chief Bailey’s prior approval.” Clements’s brief, at 60-61. However, as noted previously, Lt. Bailey testified that the documents offered at the hearing were "a true and accurate copy of [the visitor log].” Clements has provided no evidence to the contrary, nor has she cited any authority indicating that Lt. Bailey’s testimony was not sufficient to authenticate the visitor log for admissibility purposes. Therefore, Clements has not demonstrated that the Board erred in allowing the visitor log to be admitted as evidence.