[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13214

_____

KA'TORIA GRAY,

Plaintiff-Counter Defendant-Appellee-
Cross-Appellant,

*versus*

KOCH FOODS, INC.,
KOCH FOODS OF ALABAMA, LLC,

Defendants-Appellants-Cross-Appellees,

DAVID BIRCHFIELD,
MELISSA MCDICKINSON,

Defendants-Counter Claimants-Appellants-
Cross-Appellees.

—————————————

Appeals from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:17-cv-00595-RAH-JTA

—————————————

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

WILSON, Circuit Judge:

This case involves an appeal and a cross-appeal from a lawsuit arising out of alleged harassment experienced by Plaintiff-Appellee-Cross-Appellant, Ka'Toria Gray, who filed suit against her former employer, Defendant-Appellee Koch Foods of Alabama, LLC (Ala-Koch); Ala-Koch's parent company, Defendant-Appellee Koch Foods, Inc. (Koch Foods); and Defendants-Appellants-Cross-Appellees, former Ala-Koch employees, Melissa McDickinson and David Birchfield, both of whom were human resources (HR) managers.

After trial, a jury rendered a verdict for Koch Foods and Ala-Koch on all claims, in favor of Birchfield and McDickinson on Gray's claims of invasion of privacy and outrage, and in favor of Gray on her claims for assault and battery. The jury awarded Gray $50,000 in total damages—$5,000 in compensatory and $20,000 in punitive damages against Birchfield and $5,000 in compensatory

and $20,000 in punitive damages against McDickinson. Birchfield and McDickinson appealed, and Gray cross-appealed.

There are five issues on appeal: (1) whether there was sufficient evidence of assault and battery against McDickinson and Birchfield; (2) whether Gray showed clear and convincing evidence of wanton, oppressive, or malicious actions by McDickinson or Birchfield sufficient to sustain the verdict for punitive damages; (3) whether the district court erred in denying Gray's motion for a new trial on her Title VII[1] sexual harassment claim against Ala-Koch and Koch Foods; (4) whether the district court erred in granting summary judgment on Gray's Title VII sexual harassment constructive discharge claim; and (5) whether Gray is a proper prevailing party in any respect for purposes of awarding costs, and whether Koch Foods and Ala-Koch are proper prevailing parties with respect to Gray's claims against them.

After careful review and with the benefit of oral argument, we affirm the district court on all issues.

## I.    Factual Background

Ala-Koch is a limited liability company that owns and operates several chicken processing facilities in Alabama. Koch Foods is the sole member of Ala-Koch. In 2011, Gray began working as a nurse in the safety department at Ala-Koch's Debone Plant in Montgomery. Gray's work primarily consisted of providing medical treatment to Ala-Koch employees. In the early days of her

---

[1] Title VII is codified as amended at 42 U.S.C. § 2000e–§ 2000e-17.

employment, Gray did not report to any one supervisor, but she was eventually placed under the supervision of Frank Sheley, the Debone Operations Safety Director.

This case arises from incidents of alleged harassment committed by HR Managers McDickinson and Birchfield against Gray beginning in 2015. On the night of Saturday, November 14, 2015, McDickinson invited Gray to her house. According to Gray, during a phone call, McDickinson told Gray that she and Birchfield wanted to talk with her about "some stuff from work" and "that there was some other people there from work." When Gray asked McDickinson about the work "stuff," McDickinson replied that she would tell Gray about it when she arrived. Gray accepted the invitation and went to McDickinson's house. When Gray arrived, she was greeted by Steven Jackson, another Ala-Koch employee, who told Gray to enter through the garage. When Gray entered the garage, she found only McDickinson and Birchfield. McDickinson and Birchfield offered Gray alcohol, but Gray declined. Small talk ensued, and at some point, Birchfield took a picture of Gray and McDickinson sitting next to each other in the garage.

Gray and McDickinson eventually began to speak about the work-related matter. McDickinson told Gray that she knew Gray had applied for a promotion to a new position, that Birchfield planned to give her that position, and that she would work with Gray to "get rid of" another employee at Ala-Koch, whom Gray did not like. McDickinson and Birchfield also asked Gray if they could

trust her, and McDickinson asked Gray to help her with some of McDickinson's school assignments.

After the conversation regarding McDickinson's school work, the atmosphere in the garage shifted. According to Gray, while sitting in the chair next to Gray, McDickinson leaned in towards Gray, put her hand on Gray's knee, and said that Gray smelled "really good." Gray moved McDickinson's hand away and thanked her. McDickinson then leaned in again and told Gray that she was attracted to her. Birchfield sat nearby and observed the interaction. Gray told McDickinson that McDickinson was making her uncomfortable, especially with Birchfield there. McDickinson then asked Gray if she wanted to dance. Birchfield then chimed in, saying that he wanted to watch them dance. Gray said she did not want to dance, but McDickinson grabbed Gray's hand, pulled her up, and continued to encourage her to dance. When Gray refused, McDickinson instructed Birchfield to fix Gray a drink. Gray once again declined.

Birchfield then came up behind Gray and said, "go on I want to see you all dance." According to Gray, Birchfield then pressed into Gray's back while McDickinson pressed her body into Gray's front, and McDickinson and Birchfield "sandwiched" her. As they pressed against her, Birchfield leaned in and said into Gray's ear that he wanted to kiss her, and he had never kissed someone with braces before. Gray turned around toward Birchfield, who pulled her in and kissed her on the mouth. Gray pushed Birchfield back and tried to move out from between them.

As Gray attempted to free herself, McDickinson grabbed Gray's hand and attempted to place it on McDickinson's breasts. Gray jerked her hand away and backed away. McDickinson then asked Gray to have sex with her and Birchfield, but Gray refused. McDickinson then suggested instead that just she and Gray could have sex while Birchfield watched. Again, Gray refused. McDickinson then pulled Birchfield's pants down and began to fellate him in front of Gray. Gray then went to the bathroom, composed herself, and made her exit.

About one week after the garage incident, McDickinson called Gray to her private office. Gray walked in and saw McDickinson sitting at her desk, her blouse unbuttoned without a bra underneath. McDickinson told Gray she had a sunburn, walked over to Gray, and pressed her breasts against Gray's breasts. Gray backed away, told McDickinson she was not interested, and left the room. After this office interaction, McDickinson continued to invite Gray to her house and at one point invited Gray to go to the beach with her and Birchfield. Each time, Gray refused, but the invitations continued into late February 2016.

In March 2016, Gray met with McDickinson and Birchfield to discuss Gray's issues with another coworker. During the meeting, Birchfield told Gray that McDickinson would supervise Gray moving forward. About three weeks later, McDickinson issued Gray a "memorandum of understanding," or warning, concerning Gray's alleged failure to report two recent absences. According to

Gray, she had cleared these absences with another HR employee because McDickinson had been absent from work.

Gray filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on April 18, 2016, alleging that she had been sexually harassed by McDickinson and Birchfield on the night of the garage incident, that she had experienced retaliation for rejecting their advances, and that she believed she would be subjected to future discipline if she continued to refuse their sexual requests. Gray resigned from Ala-Koch on April 29, 2016. Birchfield subsequently filed a complaint about Gray with the Alabama Board of Nursing, claiming that on April 27, 2016, Gray had refused to properly treat an Ala-Koch employee with a head wound.

According to Gray, McDickinson and Birchfield fabricated the complaint to retaliate against her for filing the EEOC charge against them. The nursing board found that the complaint had merit and that Gray should be admonished for not appropriately treating the employee. The record does not reveal what role, if any, McDickinson and Birchfield played in the nursing board's investigation. In November 2016, Gray filed a second EEOC charge, this time alleging that Birchfield's nursing board complaint was retaliatory.

## II.    Procedural History

Gray sued McDickinson, Birchfield, Ala-Koch, and Koch Foods in the Middle District of Alabama. In her Third Amended Complaint, Gray alleged the following federal and state-law claims:

(1) invasion of privacy against all Defendants; (2) assault and battery against all Defendants; (3) outrage against all Defendants; (4) negligent/wanton supervision, training, and retention against Ala-Koch and Koch Foods; (5) retaliation for race discrimination under 42 U.S.C. § 1981 and Title VII against Ala-Koch and Koch Foods; (6) sexual harassment under Title VII against Ala-Koch and Koch Foods; and (7) retaliation for complaints of sexual harassment under Title VII against Ala-Koch and Koch Foods. McDickinson and Birchfield brought counterclaims against Gray for defamation and invasion of privacy.

All parties moved for summary judgment. Birchfield and McDickinson moved for summary judgment on the claims for invasion of privacy, outrage, assault and battery, and punitive damages. Koch Foods and Ala-Koch moved for summary judgment on the federal claims. Gray moved for summary judgment on Birchfield and McDickinson's counterclaims.

The district court denied in part and granted in part the motions filed by Gray and Koch Foods/Ala-Koch and denied the motions filed by Birchfield and McDickinson. *Gray v. Koch Foods, Inc.*, 580 F. Supp. 3d 1087, 1137 (M.D. Ala. 2022). The court ordered the following claims to proceed to trial: (1) "The claim for hostile work environment sexual harassment . . . against Koch Foods, Inc."; (2) "The claims for assault and battery, invasion of privacy, and outrage alleged by Gray . . . against Melissa McDickinson and David Birchfield"; and (3) "The claim for defamation alleged by Melissa McDickinson and David Birchfield against Ka'Toria Gray." *Id.*

After a hearing, Birchfield and McDickinson moved to dismiss the counterclaims with prejudice, with the costs taxed to each party as paid. Gray opposed the dismissals, asserting she had incurred attorney's fees and costs of defense. On February 25, 2022, the district court granted the motion to dismiss the counterclaims, reserving the issue of taxation of costs until after the trial. On February 28, 2022, the case went to a jury trial.

At the end of Gray's case, Birchfield, McDickinson, Koch Foods, and Ala-Koch moved for judgment as a matter of law (JMOL) under Federal Rule of Civil Procedure 50(a). At the close of Birchfield's and McDickinson's case, Gray moved for JMOL. At the close of all the evidence, Birchfield and McDickinson, Koch Foods, and Ala-Koch renewed their request for JMOL.

On March 15, 2022, the jury rendered a verdict for Koch Foods and Ala-Koch on all claims against them, in favor of Birchfield and McDickinson on Gray's claims for invasion of privacy and outrage, and in favor of Gray on her claims for assault and battery against Birchfield and McDickinson. The jury awarded Gray $5,000 in compensatory and $20,000 in punitive damages against Birchfield and the same against McDickinson—for a total of $50,000. On March 17, 2022, the court denied all outstanding motions for JMOL and entered a Final Judgment consistent with the jury verdict.

The court taxed Gray's costs against McDickinson and Birchfield due to judgments entered against them on the assault and battery claims and due to the voluntary dismissal with prejudice of their counterclaims against Gray. The court taxed Gray for

Koch Foods and Ala-Koch's costs due to judgment entered in their favor on all claims the jury heard.

Birchfield and McDickinson subsequently moved for JMOL under Rule 50(b), seeking to set aside the Final Judgment on the assault and battery and punitive damages claims, and Gray moved for a new trial. Gray then moved to include fees—attorney's fees—as part of the costs taxed against Birchfield and McDickinson, including fees for work performed on defending their counterclaims. Gray filed a Bill of Costs in the amount of $98,539.88 against Birchfield and McDickinson, and Koch Foods filed its Bill of Costs against Gray in the amount of $51,020.12.

On May 4, 2022, the Clerk taxed costs against Birchfield and McDickinson in the amount of $98,589.38 and taxed costs against Gray and in favor of Koch Foods and Ala-Koch in the amount of $51,020.12. The same day, Birchfield and McDickinson objected to Gray's Bill of Costs, including the argument that Birchfield, McDickinson, and Gray could all be considered prevailing parties. Birchfield and McDickinson opposed Gray's motion for fees, and Gray replied.[2]

On July 28, 2022, the district court denied Birchfield and McDickinson's renewed motion for JMOL and Gray's motion for a

---

[2] On July 7, 2022, we clarified our prevailing party rules in *Royal Palm Properties, LLC v. Pink Palm Properties, LLC*, 38 F.4th 1372 (11th Cir. 2022). On July 25, 2022, Birchfield and McDickinson filed supplemental authority bearing on prevailing party status, and thus entitlement to costs, arguing the holding in *Royal Palm Properties, LLC* controlled.

new trial. As to Gray's request to include reasonable attorney's fees as part of the Bill of Costs against Birchfield and McDickinson, the district court denied the motion in part and granted the motion in part, specifically finding that Gray was entitled to costs as the prevailing party on the voluntarily-dismissed-with-prejudice counterclaims. Gray then objected to Koch Foods and Ala-Koch's Bill of Costs.

Gray submitted to the court that all costs in the Bill of Costs were "inextricably intertwined" with the dismissed counterclaims, except for some items, reducing the total by $17,164.95 to $81,424.43. Birchfield and McDickinson moved for reconsideration of the district court's order awarding costs to Gray on the counterclaims. Birchfield and McDickinson timely appealed the denial of their renewed JMOL motion, and Gray cross appealed. On December 12, 2022, the district court denied Birchfield and McDickinson's pending motion for reconsideration and reserved any remaining issues concerning specific items of costs potentially expended to defend the counterclaims until after this appeal.

To reiterate, there are five issues now before us: (1) whether there was sufficient evidence of assault and battery against McDickinson and Birchfield; (2) whether Gray showed clear and convincing evidence of wanton, oppressive, or malicious actions by McDickinson or Birchfield sufficient to sustain the verdict for punitive damages; (3) whether the district court erred in denying Gray's motion for a new trial on her Title VII sexual harassment claim against Ala-Koch and Koch Foods; (4) whether the district court

erred in granting summary judgment on Gray's Title VII sexual harassment constructive discharge claim; and (5) whether Gray is a proper prevailing party in any respect for purposes of awarding costs, and whether Koch Foods and Ala-Koch are proper prevailing parties with respect to Gray's claims against them.

### III.    Assault and Battery

McDickinson and Birchfield argue that there was insufficient evidence to support the jury's verdict for assault and battery as noted in their original and renewed motions for JMOL. This court reviews a district court's denial of a motion for judgment as a matter of law de novo, viewing the evidence in the light most favorable to the non-moving party. *D'Angelo v. Sch. Bd. of Polk Cnty.*, 497 F.3d 1203, 1208 (11th Cir. 2007).

In Alabama, "[t]o succeed on a claim alleging [assault and] battery, a plaintiff must establish: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1193 (Ala. 1998). A plaintiff may establish "that the touching was conducted in a harmful or offensive manner" by showing that the touching was conducted with sexual overtones and was unwelcome. *Id.* at 1193–94. "An actual injury to the body is not a necessary element of a civil assault and battery." *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986).

In *Atmore Community Hospital*, the plaintiff "presented evidence indicating that [another employee] touched her waist,

rubbed against her when passing her in the hall, poked her in the armpits near the breast area, and touched her leg." 719 So. 2d at 1194. She "also presented evidence indicating that each of these touchings was intentional, was conducted with sexual overtones, and was unwelcome." *Id.* The Supreme Court of Alabama found that evidence "constituted substantial evidence that [the alleged harasser] committed a battery." *Id.*[3]

And in more than one case, the Supreme Court of Alabama has denied summary judgment on an assault and battery claim where someone simply "jerked" or "yank[ed]" the plaintiff's arm. *See Harper v. Winston Cnty.*, 892 So. 2d 346, 353–54 (Ala. 2004); *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 176–81 (Ala. 2016).

We turn first to the assault and battery claim against McDickinson. As to the first and second elements of assault and battery—which boil down to intentional touching—the testimony at trial showed that in November 2015, during the garage incident, McDickinson intentionally touched Gray multiple times. Gray testified that McDickinson put her hand on Gray's knee, that

---

[3] We admit that our reliance on *Atmore Community Hospital*, which involved touches conducted with sexual overtones, *see* 719 So. 2d at 1194, does highlight the sexual nature of the assault and battery in this case. We acknowledge that highlighting may be confusing given that the jury here found insufficient evidence of sexual harassment but still found for Gray on her claim for assault and battery. We agree that such verdicts do seem confusing when considered together. But, as we discuss in Section V, Gray waived her right to challenge the sexual harassment verdict on inconsistency grounds relative to the assault and battery verdict.

McDickinson grabbed Gray's hand and pulled Gray up from a seated position to try to get Gray to dance, that both Birchfield and McDickinson "sandwiched" Gray between their bodies, that McDickinson pushed her breasts against Gray, and that McDickinson grabbed Gray's hand and attempted to put it on McDickinson's breasts.

As to the third element, that the touching was conducted in a harmful or offensive manner, Gray testified that she removed McDickinson's hand from her leg, that she did not want to dance with McDickinson, and that she felt uncomfortable after McDickinson propositioned Gray for group sex and McDickinson performed oral sex on Birchfield in front of Gray. The jury heard this testimony and chose to believe Gray. Since these facts, which are more extreme than those in *Atmore Community Hospital*, *Harper*, and *Dolgencorp, LLC*, meet the standard for assault and battery, we affirm the district court's denial of McDickinson's renewed motion for JMOL on the assault and battery claim.[4]

We turn next to the assault and battery claim against Birchfield. As to the first two elements of assault and battery—intentional touching—the trial testimony also indicates that he intentionally touched Gray, even though his touches were less frequent than those of McDickinson. Gray testified that both Birchfield and McDickinson "sandwiched" her between their bodies, and she also

_____

[4] We do so without even having to consider the subsequent incident in McDickinson's office because the garage incident alone provides ample basis for affirming.

testified that Birchfield kissed her. As to the third element of assault and battery, that the touching was conducted in a harmful or offensive manner, Gray testified that she tried to remove herself from between Birchfield and McDickinson's bodies as Birchfield kissed her.

Again, the jury heard this testimony and chose to believe Gray. These facts, which are similar if not more intense than those in *Atmore Community Hospital*, *Harper*, and *Dolgencorp, LLC*, are sufficient to meet the standard for assault and battery. Therefore, we affirm the district court's denial of Birchfield's renewed motion for JMOL on the assault and battery claim.

## IV.    Punitive Damages

Birchfield and McDickinson argue that Gray failed to present clear and convincing evidence to sustain the verdict for punitive damages for assault and battery. "We review *de novo* the denial of a motion for judgment as a matter of law on the issue of punitive damages." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1275 (11th Cir. 2008) (quotation marks omitted and alterations adopted). We employ the same standard as the district court. *Thosteson v. United States*, 331 F.3d 1294, 1298 (11th Cir. 2003).

"Under Rule 50, a court should render judgment as a matter of law when there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004) (citing Fed. R. Civ. P. 50.). We "review all of the evidence in the record

and must draw all reasonable inferences in favor of the nonmoving party," here, Gray. *Id.* at 1192–93.

In Alabama, punitive damages may not be awarded in every case. *See* Ala. Code § 6-11-20; *Coca-Cola Bottling Co. United v. Stripling*, 622 So. 2d 882, 884–85 (Ala. 1993).

> Under Alabama law, a plaintiff may be awarded punitive damages on an assault and battery claim only where the plaintiff shows by clear and convincing evidence that the assault and battery was coupled with an insult or other circumstances of aggravation *or* shows by clear and convincing evidence that the defendant consciously or deliberately engaged in the kind of activity mentioned in § 6–11–20.

*Delchamps, Inc. v. Morgan*, 601 So. 2d 442, 444 (Ala. 1992) (emphasis added). The activities mentioned in § 6–11–20 are: "consciously or deliberately engag[ing] in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6–11–20. Additionally, to be entitled to punitive damages, the plaintiff must have suffered at least nominal damages. *Gulf Atl. Life Ins. v. Barnes*, 405 So. 2d 916, 925 (Ala. 1981).

Under Alabama law, clear and convincing evidence "will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion." Ala. Code § 6–11–20(b)(4). "'Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.'" *Cheshire v.*

*Putman*, 54 So. 3d 336, 342 (Ala. 2010) (quoting *Cessna Aircraft Co. v. Trzcinski*, 682 So. 2d 17, 19 (Ala. 1996)). "The clear and convincing standard certainly can be met although the evidence [is] conflicting," particularly if the finder of fact "found" the important "testimony [to be] credible." *J.S.J. v. State*, 666 So. 2d 109, 112 (Ala. Crim. App. 1995).

We conclude that a reasonable jury, taking all evidence and inferences in favor of Gray, could have found that she proved her punitive-damages case by clear and convincing evidence.

We turn first to whether the assault and battery was coupled with an insult or other circumstances of aggravation *or* whether Birchfield and McDickinson consciously *or* deliberately engaged in the kind of activity mentioned in § 6–11–20.

In *Peete v. Blackwell*, an assault and battery case, a doctor struck a nurse on the forearm while "demand[ing] that she 'turn on the goddamn suction [machine].'" 504 So. 2d 222, 223 (Ala. 1986) (alteration adopted). The court found no "abuse of discretion" in the trial court's decision to allow some award of punitive damages given the evidence of the required circumstances of aggravation or insult. *Id.* at 224–25. The court specifically opined that the actions directed at the nurse were accompanied by "aggravating circumstances" in the form of "angry or intimidating" behavior. *Id.*

Here, no one swore at Gray or used angry behavior, but she did face other circumstances of aggravation: (1) an unequal, intimidating power dynamic, since Birchfield and McDickinson both worked for HR; and (2) being outnumbered in the garage. Because

we find that there were sufficient circumstances of aggravation, we need not consider whether Birchfield and McDickinson engaged in oppression, fraud, wantonness, or malice regarding Gray, *see Delchamps*, 601 So. 2d at 444, and we move on to the remaining issue of whether clear and convincing evidence supports the jury's verdict.

We turn next to the clear and convincing evidence standard. In *Clements v. Alabama State Bar*, an attorney appealed the suspension of her license to practice law for five years for violations of the Rules of Professional Conduct of the Alabama State Bar. 100 So. 3d 505, 506–07 (Ala. 2012). The attorney challenged that the Bar did not have clear and convincing evidence of the alleged violations. *Id.* at 512. The Supreme Court of Alabama disagreed. It explained that the attorney's arguments "regarding the sufficiency of the evidence relate almost entirely to the credibility of the witnesses against her." *Id.*

And because the "weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the" trier of fact, the clear and convincing evidence standard applies "[a]fter resolving the credibility questions and any conflicts in the testimony." *Id.* at 513 (citations omitted). As a result, "clear and convincing evidence" supported the Bar's "determination that Clements had violated the Alabama Rules of Professional Conduct," for the Bar resolved the credibility questions and conflicting testimony "against Clements." *Id.*

McDickinson's and Birchfield's challenges to the jury verdict similarly "relate almost entirely to the credibility of the witnesses against" them. *Id.* at 512. Birchfield claims he was not present in the garage on Saturday, November 14, 2015; the pair argue that Gray did not find their conduct offensive because Gray did not protest the interactions or leave the garage; they suggest their contact with Gray was unintentional; and they point to testimony where Gray could not remember certain details about what had been said or done throughout the evening in the garage. None of these arguments call into question the sufficiency of Gray's evidence on its own terms. Rather, they go to Gray's credibility and the veracity of McDickinson's and Birchfield's own testimony.

We therefore conclude that a reasonable jury, resolving all evidence, credibility questions, and inferences in favor of Gray and against Birchfield and McDickinson, could have found that there was sufficient evidence that the alleged assault and battery occurred and that it included circumstances of aggravation. Indeed, the jury chose to believe Gray's version of the events. We therefore affirm the district court on the issue of punitive damages.

## V.    Motion for a New Trial

Gray argues that the district court erred in denying her motion for a new trial on her Title VII sexual harassment claim after the jury found for Koch Foods and Ala-Koch. Gray bases her argument on: (1) inconsistency between the jury's verdict on the Title VII sexual harassment claim and its verdict on the assault and battery claim, and (2) sufficiency of the evidence.

We review the denial of a motion for a new trial for abuse of discretion. *Wolff v. Allstate Life Ins.*, 985 F.2d 1524, 1528 (11th Cir. 1993). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005).

Following a jury trial, a district court "may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A judge should grant a motion for a new trial when the verdict is against the great weight of the evidence or when the verdict would cause a miscarriage of justice. *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). "And normally, this court will reverse a decision denying a motion for new trial only where there is an absolute absence of evidence to support the verdict." *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 562 (11th Cir. 1987). The rule does not, however, "grant a license to the trial judge merely to substitute his judgment for that of the jury on questions of fact." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988) (per curiam).

Gray alleged at trial that Ala-Koch, acting through Birchfield and McDickinson, violated Title VII by subjecting Gray to a sexually hostile work environment through unwanted touching and sexual advances both in the workplace and outside it. To succeed on her claim, Gray had to prove:

(1) that . . . she belongs to a protected group; (2) that [she] has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on . . . sex . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). After hearing all the evidence, the jury determined that neither Birchfield nor McDickinson had harassed Gray because of her sex. It made no further determinations about Gray's Title VII claim.

To the extent that Gray argues that the jury's verdict on Title VII sexual harassment was inconsistent with its verdict on assault and battery, she waived that argument. We have held that, where there are verdicts involving specific interrogatories, "if the party challenging th[e] . . . verdict has failed to object before the jury is discharged, that party has 'waived the right to contest the verdicts on the basis of alleged inconsistency.'" *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1419 (11th Cir. 2011) (quoting *Mason v. Ford Motor Co.*, 307 F.3d 1271, 1275–76 (11th Cir. 2002)); *accord Itel Cap. Corp. v. Cups Coal Co.*, 707 F.2d 1253, 1261 (11th Cir. 1983). We enforce that rule because it is possible to remedy inconsistencies when the jury is present; trial counsel should seize that

22                          Opinion of the Court                         22-13214

opportunity rather than cultivate an issue for appeal. *See Coralluzzo v. Educ. Mgmt. Corp.*, 86 F.3d 185, 186 (11th Cir. 1996) (per curiam).

Here, Gray did not object to the verdicts as inconsistent until her post-trial motions, at which point Koch Foods and Ala-Koch claimed that she waived the right to contest the verdicts for that reason. And on appeal, she fails to explain her failure to object to the purportedly inconsistent verdicts. Gray thus waived her ability to contest the verdicts as inconsistent. *See Salinas*, 650 F.3d at 1419 ("Because the Bart Group did not object to the verdicts as inconsistent before the jury was excused, that issue has been waived.").

To the extent that Gray argues she is entitled to a new trial on sufficiency grounds—that is, that the jury's verdict was contrary to the great weight of the evidence—we again conclude that she is incorrect. Birchfield, McDickinson, and Jackson all provided testimony contradicting many of Gray's contentions. Again, as discussed in the last section, a reasonable jury could have rejected Gray's version of the events and credited the testimony of the others allegedly present in McDickinson's garage that night. Nothing in the record suggests that, in denying Gray's motion for a new trial, the district court applied the wrong law, followed the wrong procedure, based its decision on clearly erroneous facts, or committed a clear error in judgment.

Therefore, we affirm the district court's denial of Gray's motion for a new trial on the Title VII sexual harassment claim.[5]

## VI.    Constructive Discharge

Gray argues that the district court erred in granting Ala-Koch and Koch Foods summary judgment on her Title VII constructive discharge claim. But because we uphold the jury's verdict on Gray's Title VII hostile work environment/sexual harassment claim, we must affirm the district court's grant of summary judgment on Gray's constructive discharge claim.

After all, "[c]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case." *Pa. State Police v. Suders*, 542 U.S. 129, 149 (2004). And when "a party contests the pretrial dismissal of a claim and a jury rendered a verdict against the party on another claim, the jury's valid resolution of common issues is binding at trial of the untried claim." *DuChateau v. Camp, Dresser & McKee, Inc.*, 713 F.3d 1298, 1302 (11th Cir. 2013) (cleaned up); *see Ermini v. Scott*, 937 F.3d 1329, 1339 (11th Cir. 2019) ("We have held that a *jury verdict* on one claim can directly estop another claim in the same suit."). Put another way, even if we were to conclude the district court erred in granting summary judgment on Gray's constructive discharge claim, the jury verdict we affirm will still issue preclude Gray's constructive

---

[5] Similarly, because we find that Gray is not entitled to a new trial, we need not consider Koch Foods and Ala-Koch's argument that Gray needed to file the entire trial transcript before she could validly challenge the weight of the evidence.

discharge claim because the jury already resolved "a necessary predicate" to a "constructive discharge case." *Suders*, 542 U.S. at 149.

We therefore affirm the district court's grant of summary judgment on the constructive discharge claim.

## VII.    Prevailing Party

We turn to the final issue on appeal: prevailing party status. When reviewing a district court's prevailing party determination, we review the underlying factual findings for clear error but review de novo the legal question of whether those facts suffice to render a party a "prevailing party." *BeachBlitz Co. v. City of Miami Beach*, 13 F.4th 1289, 1297 (11th Cir. 2021).

Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." Becoming the prevailing party begins with being "awarded some relief by the court" that materially "changes the legal relationship between the parties." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022). An enforceable judgment on the merits creates the "material alteration of the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792–93 (1989)). A party who has obtained some relief usually can be regarded as the prevailing party even though she has not sustained all her claims. *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995) (per curiam).

In *Royal Palm Properties, LLC*, we held that "a district court may find (at most) one prevailing party, but it is not required to do so in every case." 38 F.4th at 1380. There, both parties sued each other for trademark infringement and lost. *Id.* at 1373. We held that "when the parties achieve a 'tie,' a district court may find no prevailing party for purposes of costs and fees." *Id.* at 1382. We also clarified that while there does not have to be a prevailing party, if there is one, there can only be one, not multiple. *Id.* at 1379.

Gray argues that because the jury found in favor of Gray on her assault and battery claims and awarded Gray both compensatory and punitive damages against Birchfield and McDickinson, Gray was properly designated as the prevailing party and entitled to costs. Birchfield and McDickinson argue that Gray was not a prevailing party for purposes of obtaining an award of costs because they dismissed the counterclaims with prejudice before trial. And in terms of the other claims, Gray prevailed on four, and McDickinson prevailed on four, which makes the result a virtual tie under *Royal Palm*. Koch Foods and Ala-Koch argue that the district court correctly determined Koch Foods and Ala-Koch were the prevailing parties in Gray's lawsuit against them and thus presumptively entitled to recover their costs because Koch Foods and Ala-Koch prevailed on every claim Gray asserted against them.

The circumstances of this case are distinguishable from those in *Royal Palm Properties, LLC*—where one plaintiff sued one defendant. *Id.* at 1373. Here, one plaintiff, Gray, sued multiple defendants: Birchfield, McDickinson, Koch Foods, and Ala-Koch. Despite those differing circumstances, Gray asks us to extend *Royal*

*Palm*'s holding that there can be only one prevailing party. *See id.* at 1382. We disagree. Extending *Royal Palm*'s holding to this case would create a rule where the plaintiff could sue any number of defendants and, if she prevailed on a single claim against a single defendant, the plaintiff could be treated as the prevailing party; meanwhile, the numerous other defendants who successfully defended the claims against them would be barred from recovering costs.

Similarly, if two plaintiffs filed a suit together, only one of them would be treated as the prevailing party regardless of whether they both prevailed on all or most of their claims. Such outcomes are nonsensical, and a rule that produces them would upset the purpose of joining parties in the first instance. Some of our sister circuits also distinguish between cases involving one plaintiff and one defendant and cases with multiple parties on either side. *See Tulsa Litho Co. v. Tile and Decorative Surfaces Mag. Publ'g, Inc.*, 69 F.3d 1041, 1043 (10th Cir. 1995); *Kollsman v. Cohen*, 996 F.2d 702, 706 (4th Cir. 1993).

Having determined that there can be more than one prevailing party in a case such as this where one plaintiff sues multiple defendants, we will now determine who the proper prevailing parties are here, if there are any.

While the district court did not specifically use the phrase, "prevailing party," it treated Gray as the prevailing party against Birchfield and McDickinson by awarding her costs against them. It also treated Koch Foods and Ala-Koch as the prevailing parties against Gray by awarding them costs against her.

The district court got it right. To see why, we look at Gray's relationship with each defendant. While she did not prevail on every claim against Birchfield and McDickinson, Gray was indeed awarded some relief by the court—favorable judgments on the assault and battery claims and $50,000 in monetary damages. *See Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 603–04; *see also Royal Palm Props., LLC*, 38 F.4th at 1376. And that relief materially changed the legal relationship between the parties, *see Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 604; *Royal Palm Props., LLC*, 38 F.4th at 1376, since Birchfield and McDickinson will owe Gray those monies.[6]

Next, we look at the relationship between Gray and Koch Foods and Ala-Koch. On Gray's claims against them, Koch Foods and Ala-Koch were awarded some relief —freedom from a judgment against them. *See Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 603–04; *Royal Palm Props., LLC*, 38 F.4th at 1376. And that relief changed the legal relationship between the parties because Koch Foods and Ala-Koch no longer face the prospect of being liable to Gray on her claims against them. *See Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 603–04; *Royal Palm Props., LLC*, 38 F.4th at 1376.

---

[6] Birchfield and McDickinson argue that Gray was not a prevailing party because Gray prevailed on four claims at trial, and Birchfield and McDickinson prevailed on four claims at trial, which makes the result a virtual tie under *Royal Palm*. But *Royal Palm* does not require claim counting. *See* 38 F.4th at 1380 (finding a tie, even though one party's cancellation counterclaim and infringement counterclaim proceeded to trial against the other party's single infringement claim).

Because the district court did not err in any of its prevailing party determinations, we affirm.[7]

## VIII.  Conclusion

The district court's judgment on all issues is **AFFIRMED**.

---

[7] Birchfield and McDickinson also argue the district court erred in awarding Gray costs based on their voluntarily dismissed counterclaims. But, as we've already concluded, Gray is a prevailing party as to Birchfield and McDickinson. So we "will not disturb a costs award in the absence of a clear abuse of discretion." *Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc.*, 134 F.3d 1458, 1468 (11th Cir. 1998). There was no abuse of discretion here. Prevailing parties are ordinarily entitled to a full award of costs, even if they do not prevail on all the issues, "unless the district court has some special reason to deny the costs." *Head v. Medford*, 62 F.3d 351, 354–55 (11th Cir. 1995) (per curiam). And we can find in the record no special reason to deny Gray the disputed costs. To the contrary, we'd expect a district court to award costs related to claims whose resolution might give rise to prevailing-party status, like costs related to claims voluntary dismissed with prejudice. *See Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007) ("The Defendants, having obtained from Mathews a voluntary dismissal with prejudice, are considered prevailing parties.").